Michael BURRUS, Respondent,

v.

NORFOLK AND WESTERN RAILWAY
COMPANY, Appellant.

No. 72579.

Missouri Court of Appeals,
Eastern District,
Division One.

July 28, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 30, 1998.

Thomas B. Weaver, Armstrong, Teasdale, Schlafly & Davis, St. Louis, for appellant.

Mark P. Dupont, St. Louis, for respondent.

GARY M. GAERTNER, Judge.

Appellant, Norfolk and Western Railway Company ("railroad"), appeals the judgment entered by the Circuit Court of the City of St. Louis in favor of respondent, Michael Burrus, on his Federal Employer's Liability Act ("FELA") claim. We affirm.

Burrus (hereinafter "plaintiff"), formerly a conductor for railroad, filed an action for injuries he suffered when the train he was conducting struck two cars of a Burlington Northern coal train and derailed as the result of his co-worker's negligence. He filed a motion for partial summary judgment on the issue of railroad's liability, which the trial court granted. A jury trial was then held to determine plaintiff's damages, including whether any such award should be diminished by plaintiff's alleged negligence, and to determine whether plaintiff was liable to railroad for damages it suffered due to any negligence on plaintiff's part. The following account is taken from the undisputed facts as alleged by plaintiff in his motion for summary judgment and admitted by railroad in its response.

Railroad, at all pertinent times, was engaged as a common carrier in interstate commerce in various states of the United States, including Missouri. Plaintiff was employed by railroad as a conductor/brakeman on May 19 and 20, 1994, the latter being the date of the incident. John P. Burton was also employed by railroad as a locomotive engineer on those dates. He was responsible for controlling the locomotive engine units at the time of the incident.[1]

Plaintiff and Burton went on duty at 8:40 p.m. on May 19, 1994, in Moberly, Missouri. At 6:10 a.m. on May 20, after transporting various rail cars to different destinations, plaintiff and Burton traveled toward rail-

---

1. Railroad admitted this allegation and qualified it by stating "during the trip, [plaintiff] and Mr. Burton were 'in charge' of the train." In his deposition, plaintiff stated he and Burton were "in charge," and explained "the conductor is in charge of the train; the engineer is in charge of the engine."

road's North Kansas City yard in train 145, which consisted of two attached locomotive engines with no rail cars. As the train approached the Hannibal bridge, plaintiff opened a window to the left of him and sat up straight in order to remain alert and attentive. He called a clear signal at the Hannibal bridge.[2] The train proceeded past the bridge and approached the Ustick Tower, where a railroad traffic signal controls railroad traffic at the Harlem Interlocking. At approximately 7:20 a.m., train 145 proceeded past a red signal just west of the Harlem Interlocking and struck two cars of a Burlington Northern coal train. The collision derailed these cars as well as one of railroad's locomotive engines.

G.D. Bancroft was employed by railroad as Trainmaster of Moberly, Missouri. He had supervisory responsibility for both plaintiff and Burton. Bancroft was contacted on the morning of May 20 and informed of the accident. He immediately traveled to the accident site. There he spoke with engineer Burton, who admitted he had fallen asleep prior to the accident. From his investigation, Bancroft concluded the accident was caused by Burton's falling asleep and lack of attention in violation of railroad's safety and conduct rules, and by his failing to stop the locomotive engine prior to reaching the red stop signal just west of the Harlem Interlocking in violation of railroad's operating rules.[3]

Ronald E. Jacobs was also employed by railroad at the time of the accident. Jacobs was the Road Foreman of Engines for railroad's St. Louis, Moberly, and Kansas City territory. He had supervisory capacity and was responsible for training railroad's engineers and for conducting examinations on railroad's safety and operational rules. Jacobs had spoken with three railroad supervisors—including Bancroft—about the accident, all of whom told him that plaintiff and Burton had admitted falling asleep prior to the accident during their interviews.[4] Jacobs admitted the accident was caused by Burton's falling asleep in violation of railroad's safety and conduct rule and by Burton's failing to stop the locomotive engines before a red signal in violation of railroad's operational rules.[5]

Plaintiff filed a petition against railroad for damages for back injuries he allegedly sustained in the accident. Railroad filed its answer and a counterclaim for damages it sustained to its locomotive engine as a result of plaintiff's alleged negligence. Burton also filed a suit against railroad.[6] Railroad filed an answer and counterclaim against Burton, alleging Burton was responsible for controlling the operation of the train, and claiming railroad suffered damages due to Burton's negligent failure to exercise reasonable care in said duties.

At the time of the accident, railroad had in effect Operating Rule 240, which required "[a] train or engine approaching a signal displaying a STOP indication must stop before any part of the equipment passes the signal." Railroad also had in effect Safety and General Conduct Rule GR–26 prohibiting sleeping on duty and Rule GR–27 requiring employees to give undivided attention to their duties. These rules were attached to plaintiff's motion, along with portions of the investigative hearing held by railroad, the pleadings from Burton's suit and railroad's

---

2. "Calling signals" is a practice whereby the conductor calls out the railroad traffic signals to the engineer as the train approaches each one. A "clear" signal means the train may proceed on its course without slowing or stopping.

3. Railroad admitted these facts as stated in paragraph 23 of plaintiff's motion for summary judgment, in conjunction with its assertion plaintiff's acts or omissions were a cause of the accident.

4. In his deposition, plaintiff denied falling asleep while on duty. The record indicates plaintiff was not directly asked whether he fell asleep, nor did plaintiff state he had fallen asleep. Plaintiff told the supervisors in his interview following the accident he had no recollection of events after calling the clear signal at the Hannibal bridge until he "woke up" during the impact, from which the supervisors inferred plaintiff had been asleep.

5. Railroad admitted these facts as stated in paragraph 25 of plaintiff's motion for summary judgment, in conjunction with its assertion plaintiff's acts or omissions were a cause of the accident.

6. Burton's lawsuit was separate from plaintiff's, and is not a part of this appeal.

counterclaim against him, and the deposition testimony of plaintiff, Bancroft, and Jacobs.

After admitting all of the above facts, railroad denied its liability. In its response to plaintiff's motion, railroad alleged several rules were in effect at the time of the accident: Operating Rule 581 provided conductors have charge of trains to which they are assigned as well as of the employees thereon; conductors are responsible for the safety of the train and passengers, and for the performance of duties by the train employees. Operating Rule 106 provided the conductor, engineer and pilot are jointly responsible for the safety of the train and engine and for observance of the rules; if the engineer or conductor fails to take the proper action to stop the train then the other crew members must do so. Lastly, Safety and General Conduct Rule GR–6 required employees to be alert and attentive and to devote themselves exclusively to railroad's service while on duty.

Railroad alleged plaintiff was "in charge" of the train, he was responsible for calling signals and watching for obstructions, and he did not remain alert and attentive in violation of railroad's rules. Railroad further alleged plaintiff fell asleep in violation of railroad's rules, and failed to wake Burton or stop the train, in further violation of railroad's rules. Railroad concluded these acts and omissions "were a cause of the accident."

Plaintiff denied portions of railroad's allegations, asserting railroad failed to support with evidence its allegations plaintiff was not alert, fell asleep, failed to take steps to wake Burton or to stop the train.[7] After a hearing, the trial court granted plaintiff's motion for partial summary judgment on the issue of railroad's liability, concluding "there is no dispute as to the fact that Burton was asleep at the time of the accident. Because he was asleep, [railroad] is negligent as a matter of

law. Whether or not Plaintiff was asleep at the time of the accident may affect his liability for contributory negligence, but it would not change the fact of [railroad's] negligence."

A jury trial was held on the remaining issues regarding damages, contributory negligence, and plaintiff's liability. The jury returned a verdict in favor of plaintiff in the amount of $800,000 as damages for the injuries he suffered as a result of the accident. The jury also found for plaintiff on the issue of contributory negligence and on railroad's counterclaim. Railroad now appeals the trial court's judgment granting plaintiff's summary judgment motion and several issues relating to the trial.

Summary judgment is appropriate where the moving party demonstrates there exists no genuine dispute as to any material fact thereby entitling the party to judgment as a matter of law. Rule 74.04(c)(3); *American Family Mut. Ins. v. Gardner*, 957 S.W.2d 367, 368 (Mo.App. E.D.1997). When a motion for summary judgment is made and supported by pleadings, affidavits, or discovery, the non-moving party must produce specific facts, by pleading, affidavit, or discovery, showing a genuine dispute as to material facts does exist. Rule 74.04(e). A general denial of the moving party's allegations supported by evidence is insufficient to meet this burden. *Id.* Whether a party is entitled to summary judgment is a question of law. *Gardner*, 957 S.W.2d at 368. Accordingly, we exercise *de novo* review of the trial court's decision. *Id.*

Railroad contends the trial court erred in granting plaintiff partial summary judgment on the issue of railroad's liability because plaintiff failed to establish railroad's negligence. Specifically railroad argues plaintiff (1) failed to prove railroad breached its duty

---

**7.** As support for its allegation plaintiff did not remain alert, railroad cited one supervisor's deposition testimony wherein he stated plaintiff had become fatigued and opened a window, and plaintiff's own deposition testimony. In his deposition, plaintiff stated he "could have been more alert[,]" but he was alert and not sleepy or drowsy. Railroad cited deposition testimony of two supervisors and plaintiff's hospital records as support for its allegation plaintiff fell asleep.

Neither supervisor stated plaintiff admitted falling asleep. The first supervisor testified plaintiff had no recollection of events from the Hannibal bridge until he "woke up" upon impact. The second supervisor stated he inferred from that statement plaintiff had fallen asleep. With respect to railroad's allegations plaintiff failed to take steps to wake Burton or stop the train, railroad cited no documentary evidence attached to its response as support for these allegations.

of care or had notice its employees would fall asleep; (2) failed to prove any negligence on the part of railroad played a part in plaintiff's injuries; (3) failed to show plaintiff's injury was foreseeable; (4) failed to refute railroad's sole cause defense; and (5) failed to prove railroad's pleadings in the Burton suit were binding admissions, and therefore the judgment should be reversed.

■ FELA provides in pertinent part:

Every common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury ... resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, ....

45 U.S.C. section 51. The provision was enacted to protect railroad workers because the general common law duty owed to employees was viewed as inadequate. *Briggs v. Kansas City Southern Ry. Co.*, 925 S.W.2d 908, 913 (Mo.App. W.D.1996). "The act was designed to be a broad, remedial statute, eliminating several common law defenses and providing liberal recovery for injured workers." *Id.* Accordingly, under FELA, a railroad's duty to its employees is broader than the duty of reasonable care imposed by common law. *Id.*

■ In order to recover under FELA, plaintiff had to prove: he was injured while in the scope of his employment; his employment was in furtherance of railroad's interstate transportation business; railroad, his employer, was negligent; and railroad's negligence played some part in causing the injury for which damages are sought. *Green v. River Terminal Ry. Co.*, 763 F.2d 805, 808 (6th Cir.1985). As previously set forth, plaintiff was employed by railroad and on duty at the time of the accident. Railroad at all times was engaged as a common carrier in the interstate transportation business. Railroad does not dispute these facts on appeal.

■ Plaintiff was next required to show railroad was negligent. FELA allows an employee to recover for injuries he suffers while on the job as a result of a fellow employee's negligence. 45 U.S.C. section 51. Railroad does not dispute Burton fell asleep while on duty and while in charge of the locomotive engine, in violation of railroad's Safety and General Conduct Rules GR–26 and GR–27. The violation of company rules is evidence of negligence. *Adams v. Atchison, Topeka and Santa Fe Railway Co.*, 280 S.W.2d 84, 91–92 (Mo.1955).

■ With respect to the element of causation, plaintiff alleged "Bancroft spoke with ... Burton, and Bancroft claims ... Burton admitted that he fell asleep prior to the accident which caused train 145 to pass through the stop signal and strike the ... Burlington Northern coal train...." This allegation was specifically admitted by railroad without qualification. Additionally, railroad admitted Bancroft, in his capacity as Trainmaster, found the accident was caused by Burton's several violations of railroad safety and operating rules, which constituted admissions against interest. *See State v. Our Savior Lutheran Church*, 922 S.W.2d 816, 821 (Mo.App. E.D.1996). Lastly, railroad admitted it had previously filed a counterclaim against Burton in a separate suit alleging Burton had negligently performed his duties causing the accident. While the pleadings are not binding judicial admissions, they were admissible as admissions against interest. *Littell v. Bi–State Transit Development Agency*, 423 S.W.2d 34, 39 (St.L.Ct. App.1967). "Where a party admits to a material fact, relevant to an issue in a case, the same is competent against him as substantive evidence of the fact admitted and is entitled to considerable weight." *Mitchell Eng., Div. of Ceco v. Summit Rlty.*, 647 S.W.2d 130, 141 (Mo.App. W.D.1982).

■ Accordingly, plaintiff met his burden of proving Burton's negligence caused the accident in whole or in part, making railroad liable as a matter of law. Railroad was then required to show Burton was not negligent in order to create a genuine issue as to railroad's liability. Railroad presented no contradictory evidence, but merely alleged any acts or omissions on the part of plaintiff "were *a* cause of the accident." (Emphasis added.) Whether any negligence on the part of plaintiff may have contributed to the accident—which is all railroad alleged in its response—does not defeat that liability, but

merely impacted what amount plaintiff might have recovered.

■ Turning to railroad's specific contentions, we find railroad's argument it did not breach its duty to plaintiff because it had no notice its employees would fall asleep to be without merit. Under FELA, plaintiff was required to show an officer, employee, or agent was responsible, through his or her negligent acts or omissions, for the presence of the unsafe condition which caused plaintiff's injuries. *Wilson v. Consolidated Rail Corp.*, 875 S.W.2d 178, 180 (Mo.App. E.D. 1994). As previously stated, Burton was negligent when he fell asleep on duty and ran the engines past a red traffic signal, causing the accident which injured plaintiff. The cases cited by railroad regarding notice are not applicable, as they do not involve a railroad employee injured by the negligent acts or omissions of a fellow railroad employee.

■ With respect to foreseeability, it has been held injury to employees or to members of the public could reasonably be foreseen from the violation of safety rules. *Adams*, 280 S.W.2d at 92. Accordingly, plaintiff only needed to show his injuries were a natural and probable consequence of railroad's negligence, and not "that the particular collision and injury to plaintiff could have reasonably been anticipated." *Id.*

■ Railroad also argues plaintiff failed to negate its sole cause defense as a matter of law. Railroad asserted ". . . the conduct of the plaintiff at and prior to the time mentioned in said petition was the sole cause of his alleged injuries, . . . ." Where a non-moving party asserts an affirmative defense, the moving party must not only establish his or her right to judgment as a matter of law, he or she must also show beyond any genuine dispute the nonexistence of some fact essential to the affirmative defense, or show the defense is legally insufficient. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 383 (Mo. banc 1993). Under the facts before us, plaintiff demonstrated Burton was the engineer with primary responsibility for the control of the locomotive engine, and his falling asleep and failure to stop the train before

the red stop signal in violation of railroad's rules caused the accident by railroad's own admissions. Accordingly, where railroad admitted Burton's negligence caused the accident, plaintiff's negligence—if any—could no longer be the only or "sole cause" of the accident. *See Adams*, 280 S.W.2d at 92 (rejecting railroad's contention plaintiff's negligence was sole proximate cause of accident where plaintiff made a submissible case of railroad's negligence and causation). Rather, such negligence could merely be a contributing cause to the collision, which issue was tried to a jury.

Railroad's next two points challenge the jury's verdict on the grounds plaintiff failed to adduce sufficient evidence railroad breached a duty of care to plaintiff, any lack of due care contributed to cause plaintiff's injury, or the injury was reasonably foreseeable. The fourth point presented contends the trial court erred in submitting the verdict director, which was modified to reflect the court's previous finding regarding railroad's liability, because the instruction did not require the jury to find for plaintiff on the issues of duty, breach, and negligence. These arguments are predicated on our finding error with the trial court's order granting partial summary judgment. As we have found no error with respect to that issue, these points are moot, and we decline to further address them.

■ Lastly, railroad argues the trial court erred in submitting Instruction 15, a converse of railroad's verdict director for damages to its property, as it failed to specify plaintiff's acts of negligence as hypothesized in railroad's verdict director. Railroad essentially contends plaintiff was required to converse Paragraph First of its verdict director (Instruction 14) setting forth plaintiff's alleged negligent acts.

Plaintiff's converse instruction was a true converse instruction. *See Drury v. Missouri Pacific R. Co.*, 905 S.W.2d 138, 146 (Mo.App. E.D.1995). As such, plaintiff only needed to converse any one of the essential elements of railroad's verdict director. MAI 33.01 Converse Instruction—General Comment (5th Ed.); *Lietz v. Snyder Manufacturing Company*, 475 S.W.2d 105, 109 (Mo.1972). Here,

plaintiff chose to converse Paragraph Second of railroad's verdict director, negligence, and Paragraph Third of railroad's verdict director, causation of damage.[8] Because plaintiff was only required to converse any one of the elements in railroad's verdict director, we find no error with plaintiff's decision to converse the negligence element, as opposed to the element setting forth the specific acts of negligence. *See Graeff v. Baptist Temple of Springfield,* 576 S.W.2d 291, 305 (Mo.1978) (holding converse instruction was proper where it submitted the negligence paragraph of verdict director rather than the paragraph conversing disjunctive submissions in the verdict director).

Based on the foregoing, the judgment of the trial court is affirmed.

GRIMM, P.J., and PUDLOWSKI, J., concur.

---

**8.** Additionally, plaintiff's converse of the negligence element specifically referenced Instruction 14.