Thomas **SABALKA**, Appellant,

v.

**THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY, Respondent.**

**No. WD 57971.**

Missouri Court of Appeals, Western District.

Submitted Feb. 14, 2001.

Decided June 29, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 28, 2001.

Application for Transfer Denied Oct. 23, 2001.

Kenneth E. Rudd, St. Louis, for Appellant.

Douglas R. Dalgleish, Kansas City, for Respondent.

Before LAURA DENVIR STITH, P.J.,[1] JAMES M. SMART, JR. and VICTOR C. HOWARD, JJ.

---

1. Judge Stith participated in the case at the time of submission as a member of the court and was specially assigned to remain on this case by order of the Supreme Court after her appointment to the Supreme Court.

SMART, Judge.

This is an appeal from a lawsuit filed by Appellant Thomas Sabalka against Respondent Burlington Northern and Santa Fe Railway ("the Railroad"), his employer, under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.* Sabalka alleged in his FELA complaint that he suffered personal injuries to his hands and wrists arising out of his employment with the Railroad and resulting from his years of exposure to vibration as a result of working as a carman, using numerous power tools which generated significant vibrations to the user.

The case was heard by a Jackson County jury, which returned a verdict for the defendant Railroad on June 14, 1999. Sabalka timely filed a motion for new trial based upon "newly discovered evidence," which was denied by the trial court. He was then granted leave by this court to file this appeal out of time. Sabalka appeals the verdict based upon six separate assertions of error on the part of the trial court.[2] We reverse and remand for a new trial based upon his first point on appeal, the assertion that the trial court erred in submitting an instruction which allowed the jury to consider the statute of limitations question.

### Factual Background

Thomas Sabalka began working for the Railroad in 1976. Originally, he worked as a "helper" doing mechanical work, includ-

ing grinding. Later, he was promoted to carman. A carman is a skilled mechanic responsible for repairing damaged freight cars. Sabalka was released from employment with the railroad in 1980, and rehired in 1986. In the course of his employment, Sabalka used various hand tools, including, but not limited to, huck guns, chipping guns, reamers, grinders, welders, impact guns and sledge hammers.

Sometime around 1988 or 1989, Sabalka began to experience some pain in his right hand. The pain was intermittent. In October 1994, Sabalka told a physician that over the previous five or six years he had intermittent pain at the volar aspect of the right wrist. The pain was intermittent. Sabalka associated the pain with the use of sledge hammers and other hammers, and the use of a staple gun. When the pain had occurred in the past, he took three aspirin and the pain was resolved. Sabalka indicated in physical therapy that he had a six year history of right wrist pain, which was "only bad when he hammers...." Sabalka stated at that time (1994) that he had an increasing problem with swelling and pain of the right hand and wrist, which he said was caused by hammering.

In the later part of 1994, Sabalka was diagnosed as having a right wrist hemangioma. A hemangioma results from abnormal blood vessel structure. It interferes with blood flow to the hand. He under-

2. Sabalka contends that the trial court erred in the following respects: (1) admitting Instruction No. 9 which allowed the jury to consider the statute of limitations question, which appellant contends was strictly an issue of law; (2) Admitting the timeline chart introduced by defendant, which also allowed the jury to improperly consider the statute of limitations issue; (3) Admitting vibration tests without proper foundation, in that they were not conducted under "substantially similar" circumstances; (4) Refusing to grant a new

trial after "newly discovered evidence" of inaccuracies in the computer calculations used in the vibration tests was brought to light; (5) Allowing an adverse inference argument by defendant due to the fact that two of Sabalka's examining physicians were not called to testify, after defendant had moved that these same physicians be excluded and plaintiff had agreed not to call them; and (6) Allowing an instruction (# 10) on contributory negligence, when there was no evidence presented at trial to support such an instruction.

went surgery to have it removed in March 1995. After returning to work, Sabalka was given lighter duty jobs, but later began experiencing pain and numbness in the fingers of both his hands. The doctor instructed him to cease using all vibrating tools in mid 1996. The problem with his hands continued, and it was eventually determined that Sabalka suffered permanent damage to his hands in the form of bilateral "white finger vibration syndrome" and bilateral ulnar nerve injury.

Sabalka filed an FELA action on December 26, 1996, contending that the Railroad was negligent in failing to take steps in a timely manner to reduce vibration injuries, and that his injuries were caused by the Railroad's negligence. The Railroad raised as an affirmative defense a claim that the action was filed outside of FELA's three-year statute of limitations established by 45 U.S.C. § 56:

No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued.

The Railroad contended Sabalka knew, prior to December 26, 1993, that he had sustained injuries to his upper extremities, and that he knew, or in the exercise of ordinary care should have known, that the injuries were caused by his work at the railroad.

The issue of the statute of limitations was raised pre-trial by motion for summary judgment. In denying the motion for summary judgment, the court noted that Sabalka complained of three injuries: a hemangioma in the right wrist, bilateral white-finger syndrome, and bilateral ulnar nerve injuries. The court stated that, as to the hemangioma, the court believed the

argument for summary judgment was "compelling." The court found the record unclear, however, as to whether the other conditions were simply "later manifestations" of the hemangioma, or separate conditions. The court elected to withhold ruling on the statute of limitations issue as to all three injuries. Sabalka, who contended originally that the hemangioma was caused by his employment, decided to drop, prior to submission of the case, any claim that the hemangioma was work related, choosing instead to submit only the other claims of injury.[3]

The parties tried the case over a period of five days in June 1999. At the instruction conference the Railroad offered an affirmative defense instruction:

Your verdict must be for defendant Burlington Northern if you believe:

First, plaintiff Tom Sabalka knew or in the exercise of ordinary care should have known, before December 26, 1993, that he sustained the injuries to his upper extremities for which he seeks to recover in this case, and

Second, plaintiff Tom Sabalka knew, or in the exercise of ordinary care should have known that such injuries were caused by his work at Burlington Northern.

The parties discussed the instruction in question as follows:

The Court: Then we would have your verdict director on affirmative defense, correct?

[Railroad]: Correct.

The Court: That is marked as Instruction No. 9, and it is patterned on—

[Railroad]: It is not an MAI

The Court: It's not. Okay.

---

**3.** The medical evidence tended to show that the hemangioma was not work related but was a congenital condition instead.

[Railroad]: It's based upon the statute of limitations which does not have an MAI instruction, although we have tried to rely on applicable case law.

The Court: Does plaintiff have any specific objection to Instruction No. 9?

[Plaintiff]: No objection as to the form; however, we take the position that the—in light of the hemangioma being-in light of the hemangioma being withdrawn from the case, it is our position that the evidence squarely shows that the suit was filed within three years of the date that the plaintiff sustained his injury. That was first manifested in this case on or about December of 1994, so it is our position that, as a matter of law, the suit was timely filed now that the hemangioma is being withdrawn; but as to the form of the instruction, we have no objection to that.

\* \* \*

[Railroad]: The parties have also tendered two different instructions on the affirmative defense, and there is a slight semantic difference between paragraph first and paragraph second, and I believe you ruled that plaintiff's version of that is what you would submit, and so I need to make a little bit of a record on that. We'll call that Refused A, mine.

The Court: Yes, the Instruction 9–A is refused and the Court will give Instruction No. 9.

The court submitted Instruction No. 9 along with the other instructions. After deliberations, the jury returned a verdict for the defendant railroad. Sabalka appeals, contending, *inter alia,* that the trial court erred in allowing the statute of limitations defense to be submitted to the jury, contending that there was no evidentiary support for submitting it to the jury because the facts are such that Sabalka's claim was timely filed as a matter of law.

### Discussion

No action under the FELA may be maintained unless it commenced within three years from the day the cause of action accrues. 45 U.S.C. § 56. A trial court must determine whether a plaintiff has complied with the statute of limitations without regard to the merits of the claim of injury. *Urie v. Thompson,* 337 U.S. 163, 168, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). The "primary purpose" of the FELA statute of limitations is to protect the railroad from having to defend against stale claims when "evidence has been lost, memories have faded, and witnesses have disappeared." *Billings v. Chicago, Rock Island and Pac. R.R. Co.,* 581 F.2d 707, 710 (8th Cir.1978).

In traumatic injury cases, when the effects of the injury are immediately apparent, the cause of action accrues at that point, whether or not the full extent of the disability is known. *Fletcher v. Union Pac. R.R. Co.,* 621 F.2d 902, 906 (8th Cir. 1980). In occupational disease cases, in contrast, the plaintiff alleges an on-going, continuous exposure to an occupational condition which accumulates and creates disability later, perhaps many years later, after the first exposure. In *Urie v. Thompson,* the United States Supreme Court held that where an injury allegedly accumulated unknowingly over time, the statute begins to run when the accumulated effects manifest themselves. *Urie,* 337 U.S. at 170, 69 S.Ct. 1018. Under this rule, a FELA claim accrues when the plaintiff knows or should know in the exercise of reasonable diligence the essential facts of his injury and its causes. *Fries v. Chicago and Northwestern Transp. Co.,* 909 F.2d 1092, 1096 (7th Cir.1990). The issue of whether a claim is barred by the statute of limitations is generally a question of law. It is to be submitted to the

jury for resolution only when there is evidence bearing on the date of the accrual from which different inferences could be drawn.

Here, the issue is whether there is evidence from which a factfinder could reasonably find that Sabalka was aware of the vibration white finger syndrome and the ulnar neuropathy prior to December 26, 1993. The evidence in this case shows that in 1988 or 89, Sabalka experienced tenderness, swelling and pain in the small area of the right wrist near the palm of the hand. The tenderness, pain and swelling were intermittent, were resolved by the taking of three aspirin, and disappeared each time for a period of months before any recurrence. When the symptoms were present, they were aggravated by activities like hammering, writing, and using a staple gun. Sometimes the activities seeming to aggravate the injury were done at work, and sometimes at home. In 1994, Sabalka was experiencing additional symptoms in his right wrist. The symptoms were not relieved by aspirin. It was in 1994, according to the medical records, that Sabalka reported an "increasing problem" with swelling and pain of the right hand and wrist. The symptoms Sabalka began complaining of in 1994 included pain, cramping and tingling in the right hand. Sabalka said these symptoms were different from the intermittent symptoms he experienced prior to that time. The symptoms led Sabalka to consult a physician, Dr. Diamant, in October 1994. This was the first time Sabalka consulted a physician about his wrist or hand.

Ultimately, in 1995, Sabalka received his first specific diagnosis, that of hemangioma. He underwent hemangioma surgery to relieve the condition. It was *after* the hemangioma surgery that Sabalka began to experience pain, cramping and tingling in his left hand and fingers. This was the first appearance of any symptoms in his left extremities. Sabalka testified that he had never had any symptoms in his left hand, left fingers, left thumb, or left wrist or arm prior to 1995. He also at this time, after the hemangioma injury, was continuing to experience similar symptoms in his right hand. In 1996, after consulting and being tested by a vascular surgeon, Sabalka learned that he had bilateral white finger syndrome and ulnar nerve injury allegedly caused by exposure to vibration.

The Railroad argues that Sabalka's history shows that he knew that he was having difficulties with his hands five or six years before the December 26, 1996 date on which he actually filed his claim, and that he knew or should have known that the difficulties he was having with his hand were related to work. The Railroad points out that it is not necessary to have a diagnosis from a physician in order to know that there is an injury, citing *Emmons v. Southern Pacific Transp. Co.*, 701 F.2d 1112, 1122 (5th Cir.1983). The Railroad points out also that in 1994, plaintiff indicated to Dr. Diamant that the pain in his right hand was exacerbated by the use of hammers during work. The Railroad also argued that even if Sabalka did not have knowledge of his injuries, he *should* have known of the injury to his hand by 1990 and was aware that the use of the hammer and tools caused the injury.

■ Sabalka argues, however, that there is a difference between having an injury of the type for which a claim for compensation can be filed, and having intermittent pain which is presumed to be a temporary condition, and which is resolved quickly by the taking of an analgesic such as aspirin. We agree.

In *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), the United States Supreme Court addressed the issue of the standard to be applied in

deciding when a railroad employee had sustained injury from a cumulative, progressive occupational disease. In that case, the employee developed silicosis as a result of his exposure over a period of thirty years to silica generated by the sanding equipment on steam locomotives. The Railroad argued that the injury occurred long before plaintiff became conscious of the injury or was diagnosed with the condition of silicosis. The Supreme Court rejected that contention, stating:

> If Urie were held barred from prosecuting this action because he must be said, as a matter of law, to have contracted silicosis prior to November 25, 1938, it would be clear that the federal legislation afforded Urie only a delusive remedy. It would mean that at some past moment in time, unknown and inherently unknowable even in retrospect, Urie was charged with knowledge of the slow and tragic disintegration of his lungs; under this view Urie's failure to diagnose within the applicable statute of limitations a disease whose symptoms had not yet obtruded on his consciousness would constitute waiver of his right to compensation at the ultimate day of discovery and disability.

\* \* \* \*

We do not think the humane legislative plan intended such consequences to attach to blameless ignorance. Nor do we think those consequences can be reconciled with the traditional purposes of statutes of limitations, which conventionally require the assertion of claims within a specified period of time after notice of the invasion of legal rights. \* \* \* "It follows that no specific date of contact with the substance can be charged with being the date of injury, inasmuch as the injurious consequences of the exposure are the product of a period of time rather than a point of time; consequently the afflicted employee can be held to be 'injured' only when the accumulated effects of the deleterious substance manifest themselves ..." (citation omitted). The quoted language, used in a state workmen's compensation case, seems to us applicable in every relevant particular to the construction of the federal statute of limitations with which we are here concerned.

*Urie*, 337 U.S. at 169–170, 69 S.Ct. 1018. The Supreme Court, therefore, adopted from a state worker's compensation decision the proposition that the employee can be considered to be injured only when the accumulated effect of the deleterious exposure manifests itself. The court did not rule that the employee is considered injured whenever the employee is aware of any symptom, even a temporary symptom. Rather, it is a matter of when the employee should be aware that there is an injury of a compensable nature.

Here, we examine the evidence of what facts "obtruded" on Sabalka's consciousness, and what he should have known in the exercise of ordinary care, prior to December 26, 1993. We believe the record falls short of providing facts from which it can reasonably be inferred that a reasonable person in Sabalka's circumstances would have been aware he had an injury prior to December 26, 1993.[4] As far as we

---

4. The FELA allows recovery for "injury or death resulting in whole or in part from the negligence" of the railroad. There is, however, no statutory definition of "injury," but we believe it would include more than a temporary inflammation. For instance, BLACK'S LAW DICTIONARY 786 (6th ed.1990) states:

> In worker's compensation acts, "personal injury" means any harm or damage to the health of an employee, however caused, whether by accident, disease, or otherwise,

can tell from the medical records and testimony, prior to December 26, 1993, Sabalka was aware only of some intermittent pain, along with some tenderness and swelling. The use of a hammer tended to aggravate the symptoms of pain. The pain was relieved by taking three aspirin. The pain was transitory, and did not recur for several months. There is no evidence that it incapacitated him in whole or in part. It was not the kind of condition, we believe, which would cause a reasonable person to believe that any damage to any bodily structure had taken place. There is no evidence showing Sabalka would not reasonably have considered his symptoms merely a temporary inflammation. Indeed, we believe it would have seemed foolish to him to file a claim for compensation under the FELA prior to December 26, 1993. At that time, he had no lingering symptoms and no substantiation of any injury. He had not suffered symptoms severe enough to cause him to consult a physician about his right hand or wrist. Sabalka had absolutely no symptoms in his left hand. The intermittent symptoms did not create awareness that he was suffering from a bodily condition causing incapacity.

Sabalka also argues that the evidence shows the intermittent symptoms he was experiencing in the period from 1988 to 1994 may have been merely the hemangioma which was later diagnosed in 1995 and which may not have even been a work-related condition. Sabalka argues that only the more distinct symptoms which he began to experience bilaterally in 1995 and 1996, for which the doctors, for the first time, instructed him to change his work activities, would have created the initial awareness of an injury caused by his employment. Sabalka points out that the Railroad does not argue that the hemangioma caused the other conditions, or that the other conditions were extensions of the hemangioma. Sabalka believed that by dropping his claim concerning the hemangioma at trial, he was removing any doubt about whether he had filed his claim within the statutory period. We believe that decision did help clarify the matter. In any event, even if the intermittent pain prior to 1994 had been related to the white finger syndrome and the ulnar neuropathy, it still would have been only intermittent symptoms relieved by taking aspirin.

For these reasons, we believe that the submission, over Sabalka's objection, of the instruction on the statute of limitations to the jury, was error.[5] As a matter of law, there was no evidence to warrant the submission of the statute of limitations instruction to the jury.

The reason for the limitations period in the FELA is to protect the railroads from having to defend against stale claims "when evidence has been lost, memories have faded, and witnesses have disappeared." *Billings,* 581 F.2d at 710. It is not to foreclose claims of injury where the

---

which arises in the course of and out of his employment, and incapacitates him in whole or in part[.]

Whatever "injury" may mean in various contexts, we believe a mere inflammation relieved by aspirin would not qualify as an injury.

5. The Railroad argues that Sabalka did not preserve his objection to the instruction because his attorneys prepared the form of the instruction and originally tendered the instruction that was actually given. The Railroad overlooks the fact that the instruction was prepared and tendered before the instruction conference, and before Sabalka dropped the claim of the hemangioma, and in his view the withdrawal of the hemangioma claim removed any doubt concerning the timeliness of the claim. Therefore, he was entitled to object to the *giving* of the instruction at the instruction conference, which he did, even though he did not complain about the *form* of the instruction.

worker has reasonably believed that his intermittent and transitory minor symptoms are merely instances of mild inflammation which will continue to resolve with no lasting effect. The evidence shows that, at the worst, he was "blameless," *Urie*, 337 U.S. at 170, 69 S.Ct. 1018, in failing to file his claim sooner. At best, the symptoms he was experiencing prior to 1994 were not even related to the conditions he submitted to the jury.

■ As for whether the instruction in this case was prejudicial, we believe it was. *Hiers v. Lemley*, 834 S.W.2d 729, 734 (Mo. banc 1992) (concluding plaintiff was prejudiced by erroneous converse because jury may have been misled). It is true that there were other significant issues in this case besides the statute of limitations, including issues related to negligence and causation. We note that the railroad argued the statute of limitations to the jury. We do not know the basis of the decision of the jury, but because some or all of the jurors might have mistakenly believed the claim was not timely, and because we hold the claim was timely as a matter of law, we reverse the judgment and remand for a new trial.

As for the issues raised in the additional assignments of error, some of which may recur, we refer the parties to their briefs.

LAURA DENVIR STITH, Sp.J. and HOWARD, J., concurs.