Curt Louis JONES, Appellant,

v.

THE KANSAS CITY SOUTHERN
RAILWAY COMPANY,
Respondent.

No. WD 67957.

Missouri Court of Appeals,
Western District.

Dec. 18, 2007.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 29, 2008.

Fritz G. Faerber, St. Louis, MO, for Appellant.

James M. Yeretsky, Kansas City, MO, for Respondent.

Before HAROLD L. LOWENSTEIN, P.J., JOSEPH M. ELLIS, and THOMAS H. NEWTON, JJ.

## Summary

THOMAS H. NEWTON, Judge.

Mr. Curt Louis Jones, a former employee of Kansas City Southern Railway Company (KSC), brought a Federal Employers' Liability Act (FELA) claim against KCS for work-related injuries. KCS filed a motion for summary judgment based on the statute of limitations. The trial court granted the motion. We reverse and remand.

## Factual and Procedural Background

On June 9, 2004, Mr. Jones filed a FELA lawsuit against KCS for cumulative trauma injuries to his neck, shoulders, knees, and lower back. Mr. Jones began working for KCS in 1981 as an electrician. He had to "work with and on, a variety of surfaces, grades, and locations"; to lift heavy fuel pumps into position; and to use heavy tools. In 1985, Mr. Jones became a mechanical foreman but continued to perform the same tasks and duties of an electrician. In 1999, Mr. Jones transferred to a desk job as a mechanical coordinator. He managed the office operations, organized the paper work, and operated office equipment including telephones and computers. In 2002, Mr. Jones reported to his doctor that he experienced great pain after working eight hours. His doctor recommended an eight-hour workday rather than the usual twelve-hour shift. KCS refused to reduce the work hours, so he retired in 2002 and applied for disability.

Mr. Jones answered KCS's interrogatories and stated that he sustained the following injuries: osteoarthritis, pain, swelling, and popping in both knees; cervical disc disease and pain in neck; chronic lower back pain; pain in both shoulders and bilateral rotator cuff tendonitis; pain in both wrists and tendonitis of bilateral wrists; and other conditions as stated in the medical documents. Based on medical records diagnosing similar ailments before 2001, his deposition testimony, and statements made within his disability application, KCS filed for summary judgment. KCS argued that the three-year statute of limitations under FELA barred the lawsuit. Mr. Jones filed a response. The trial court granted the motion. Mr. Jones appeals.

On appeal, Mr. Jones argues that the trial court improperly granted summary judgment because there is a factual dispute as to the accrual date for the cause of action. Specifically, he argues the trial court erred in granting summary judgment because there were genuine issues of material fact as to when he knew or should have known that his shoulders, left knee, right knee, neck, back, and wrists were injured, and as to when he knew or should have known that his work performance caused those injuries.

## Standard of Review

Rule 74.04 states that a summary judgment is appropriate where the record

shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Thus, we review the granting of a summary judgment motion *de novo. Burrus v. Norfolk & W. Ry.*, 977 S.W.2d 39, 42 (Mo. App. E.D.1998). In our determination, we view the pleadings and evidence including depositions, affidavits, and other discovery documents in the light most favorable to the nonmoving party. *Rogers v. Ill. Cent. R.R.*, 833 S.W.2d 426, 427 (Mo.App. E.D. 1992). Additionally, all reasonable inferences drawn from the record are also viewed in the nonmoving party's favor. *Butler v. Burlington N. & Santa Fe Ry.*, 119 S.W.3d 620, 621 (Mo.App. W.D.2003).

### Legal Analysis

Mr. Jones argues that summary judgment was improperly granted because the record shows a genuine issue of material fact as to the accrual date of his cause of action against KCS under FELA. Once a party files a motion for summary judgment, the nonmoving party must respond to demonstrate that a genuine issue of material fact exists in the record or that the moving party is not entitled to judgment as a matter of law. *See* Rule 74.04. We accept the facts alleged in the motion as true unless the nonmoving party contradicts them in their response. *Butler*, 119 S.W.3d at 621. Any denials of the alleged undisputed facts must be based on the record to create a contradiction. Rule 74.04(c)(2). Thus, a genuine issue of material fact exists when the record contains "two plausible, but contradictory, accounts of the essential facts." *Barnes v. Union Pac. R.R.*, 867 S.W.2d 706, 708 (Mo.App. E.D.1993) (internal quotation marks omitted). The summary judgment will be affirmed if the record shows there is no genuine issue of material fact and KCS is entitled to judgment as a matter of law. *See* Rule 74.04.

FELA actions must commence within three years from the date the cause of action accrued. *Rogers*, 833 S.W.2d at 427 (citing 45 U.S.C. § 56). In situations where continual exposure to a harmful condition produces an injury, the cause of action accrues when the injury manifests itself. *Id.* The discovery rule is employed to determine when a manifestation of the injury has occurred. *Id.* Thus, FELA claims accrue when an employee knew or should have known, in the exercise of reasonable diligence, the critical facts of both his injury and its cause being work-related. *Id.* at 428; *Sabalka v. Burlington N. & Santa Fe Ry.*, 54 S.W.3d 605, 609 (Mo. App. W.D.2001). To that extent, the accrual date may occur before an employee receives a diagnosis of the injury. Where the evidence shows that the pain was intermittent such that it would resolve with medicine and did not incapacitate the claimant, the claimant is not armed with critical facts of the injury. *Sabalka*, 54 S.W.3d at 612. Mr. Jones's petition was filed on June 9, 2004, which means that the accrual date for the cause of action has to be on or after June 9, 2001, to comply with the statute of limitations.

In its motion for summary judgment, KCS relied on medical history and Mr. Jones's statements to show that Mr. Jones was armed with critical facts that he had been injured well before June 9, 2001. The medical records indicate that Mr. Jones suffered from several ailments before 2001, on some of the same body parts that have been allegedly injured. However, the same medical records indicate that Mr. Jones's pain was intermittent, resolved in most of the body parts, and did not encumber his labor. The medical records also indicate that each doctor visit for the pain he experienced was prompted by athletic activities outside of work, which sug-

gests that Mr. Jones could have reasonably believed that those activities caused the injuries. Similarly, the statements Mr. Jones made in his deposition or on his disability application do not conclusively show that he had knowledge of critical facts that he had been injured or that the source of his injury was work related. While the record could support the theory of KCS, it also could support the theory of Mr. Jones. Summary judgment is inappropriate where the inferences drawn from the record support both the moving party's and the nonmoving party's accrual dates. *Barnes,* 867 S.W.2d at 709. Thus, the accrual date then becomes a question of fact for the jury to decide. *Id.*

### Shoulders

■ Mr. Jones argues that the trial court erred because he did not know and should not have known that he sustained osteoarthritis in his right shoulder or that the injury was work-related. KCS argues that this a different characterization from the bilateral rotator cuff tendonitis that he claimed during discovery. While this is true, Mr. Jones asserted in his response that he was diagnosed with osteoarthritis in his right shoulder in 2005. In its reply, KCS claimed that the diagnosis did not preclude summary judgment because the medical records and Mr. Jones's deposition showed that Mr. Jones experienced pain in his right shoulder, and a diagnosis is not needed to start the clock running. Thus, the issue before the trial court and this court is whether the symptoms experienced before June 9, 2001 provided Mr. Jones with critical facts that he had osteoarthritis in his shoulder.

The medical records state that in 1990, Mr. Jones felt right shoulder pain after attempting to catch a fly ball. It can be inferred that the problem was resolved because the medical record states, the "discomfort has pretty much ceased" and he has "[f]ull range of motion of the shoulder without pain." Mr. Jones did not revisit the doctor for pain in the right shoulder until 2000, after he injured it in a car accident. At that time, the doctor suspected rotator cuff syndrome. Less than a month afterward, the doctor stated that Mr. Jones had "full range of motion" in his right shoulder. The left shoulder is mentioned for the first time in 2002 after Mr. Jones complained that his shoulders hurt while sitting at his desk. The doctor diagnosed him with bilateral rotator cuff tendonitis without taking x-rays of the shoulders. A year after Mr. Jones stopped working, he visited the doctor again because he was experiencing pain in his shoulders and in his right medial elbow whenever he tried to lift things. The doctor suspected right elbow medial epicondylitis and administered medicine; the right elbow was x-rayed. In August 2005, Mr. Jones visited the doctor complaining of pain and decreased motion in his right shoulder. An x-ray of the right shoulder was taken, and the doctor diagnosed Mr. Jones with osteoarthritis based on the large osteophyte on his arm shown in the x-ray taken of his right shoulder.

The medical history indicates to us that Mr. Jones experienced intermittent pain in his right shoulder that would resolve with physical therapy, similar to the claimant in *Sabalka.* In *Sabalka,* the claimant experienced pain and swelling in his right wrist in 1988 or 1989. 54 S.W.3d at 610. The pain would occur probably every three months but would resolve with nonprescription analgesics. *Id.* The pain would increase while he performed tasks at work and at home. *Id.* In 1994, Mr. Sabalka visited a doctor for the first time because he started experiencing cramping and tingling and the pain was unresponsive to analgesics. *Id.* The doctor diagnosed him with a condition and performed surgery to

alleviate the pain in 1995. *Id.* Afterwards, Mr. Sabalka began to experience the same symptoms in his left extremities and in his right hand. *Id.* In 1996, he was diagnosed with two different injuries to the same extremities. *Id.* Mr. Sabalka filed his FELA claim in 1996. *Id.* The employer argued that Mr. Sabalka should have known that he sustained injury before 1993 because of the symptoms he experienced before 1990 and that they were caused by his work at the railroad. *Id.* This court held that the clock does not start running simply because the claimant experiences symptoms. *Id.* at 611. Rather, the clock starts running when the symptoms are so severe that they cause some incapacitation in whole or part. *Id.* at 611–12. Therefore, the court concluded that Mr. Sabalka did not experience symptoms before 1993 that would have indicated "damage to any bodily structure had taken place." *Id.* Likewise, Mr. Jones's intermittent pain in his right shoulder, which was diagnosed as rotator cuff tendonitis, and which resolved with physical therapy, was not enough to prove that Mr. Jones knew or should have known that he had sustained the more serious injury of osteoarthritis.

Although Mr. Jones complained of aching at the end of the day during 1999, a reasonable person would not have known that the pain was attributable to a bodily condition causing incapacity. The pain could reasonably have been attributable to sore muscles caused by the intensive labor Mr. Jones was required to perform several hours a day. Because we afford the non-moving party all favorable inferences, we cannot find as a matter of law that Mr. Jones knew or should have known that he sustained an injury when he was diagnosed with rotator cuff tendonitis such that he is time-barred from bringing the claim for osteoarthritis.

Mr. Jones knew or should have known that his shoulders were injured when he started experiencing pain in his shoulders without having performed intensive labor. The only evidence of this awareness is in the medical record dated 2002 after he had been at his new job for at least two years, which is within the three-year deadline. *See Kemp v. Burlington N. Ry. Co.,* 930 S.W.2d 10, 13 (Mo.App. E.D.1996). It is not necessary to discuss the causal connection because we have determined that the evidence did not show as a matter of law that Mr. Jones had sustained injuries to his shoulder.

### Knees

■ Mr. Jones describes the knee injuries as popping, swelling, and osteoarthritis-specifically a patellar joint injury and tri-compartmental arthritis [of the right knee] that required a total knee replacement in 2005. KCS alleged in its summary judgment that Mr. Jones started receiving treatment for his knees in 1996 to prove that Mr. Jones knew or should have known the knees were injured earlier than June 9, 2001. For additional support, KCS also cited Mr. Jones's deposition statement that he was experiencing aches and pains in the knees during work that continued at home in 1999. Mr. Jones responded that he did not have "problems" with his knees, he was seen by Dr. Webb on one occasion in 1996, and he did not receive medical treatment for his knees at the time. He claimed that his visits in 1996 and again in 2000 do not show that the pain he experienced during those times was "evidence of a slowly manifesting permanent condition." KCS replied that Mr. Jones also received a diagnosis of osteoarthritis on his right knee in 1996.

KCS is correct that Mr. Jones possessed critical facts about his right knee sustaining injury before 2001. As stated in the discussion above concerning the shoulders,

the statements that Mr. Jones ached and was in pain during work and at home is not conclusive evidence that Mr. Jones should have known his knees sustained injury. Such pains and aches could refer to soreness of the muscles due to excessive physical exertion at work. A diagnosis, however, of an injury that is listed as the claim in lawsuit is conclusive evidence that the claimant knew critical facts that his right knee was injured. *See Rogers*, 833 S.W.2d at 431 n. 7.

In 1996, Mr. Jones complained about swelling on the right knee whenever he tried to engage in athletic activity. His doctor suspected osteoarthritis of the right knee and prescribed a medication to alleviate the symptoms. At this point, Mr. Jones was armed with critical facts that his right knee was injured. Mr. Jones argues that the symptoms he experienced in 2002 were different from those in 1996, so that he was not armed with critical facts of his injury. Regardless of his common symptoms in 1990, Mr. Jones was told that the symptoms could have been a sign of osteoarthritis. Such knowledge arms him with critical facts that he had sustained injury to the knee. To find otherwise would contravene one of the purposes of the statute of limitations, which is to encourage " 'prompt presentations of claims.' " *Reasons v. Union Pac. R.R. Co.*, 886 S.W.2d 104, 108 (Mo.App. E.D. 1994) (quoting *Johnson v. Norfolk & W. Ry. Co.*, 836 S.W.2d 83, 87 (Mo.App. E.D. 1992)).

Nevertheless, the injury to the right knee is still a viable claim because Mr. Jones did not possess critical facts that the injured knee was a result of his labor for KCS until July 19, 2001. KCS claims that Mr. Jones knew or should have known that the injury was work-related because he secured a desk job to ensure job longevity. Also, KCS claims that his statement that

his knees would ache during work in 1995 supports the finding that Mr. Jones knew or should have known that his injury was work-related before June 9, 2001. Neither one of those reasons is conclusive evidence that Mr. Jones possessed critical facts that would indicate to the reasonable person that his work was causing irreparable harm to his knees. *See Barnes*, 867 S.W.2d at 709. Mr. Jones's initial visit to the doctor concerning pain in the right knee was a result of Mr. Jones feeling pain from being physically active. Mr. Jones could have reasonably attributed the cause of his osteoarthritis to his athletic activities rather than work. Also, his transferring position from foreman to coordinator "to [give his] job more longevity" could reasonably be interpreted as a measure taken to prevent him from sustaining an incapacitating injury. Thus, Mr. Jones was not armed with critical facts that work caused his injury until July 2001, the date he spoke to his doctor about it.

As for the left knee, there was no evidence indicating that Mr. Jones knew or should have known that the left knee was injured before June 9, 2001. The diagnosis of osteoarthritis in the knee in 1996 was strictly for the right knee. The symptoms experienced on the right knee, indicating a permanent injury, were not shared with the left knee. Again, Mr. Jones's complaints about his "knees aching" during work in 1995 and at home in 1999, is not conclusive evidence that he knew or should have known that his left knee sustained permanent injury as a matter of law. The aches and soreness referred to could reasonably be attributable to sore muscles due to the nature of the work. Mr. Jones stated that he did not feel increased pain in the left knee until July 19, 2001; the medical records show that his doctor suspected osteoarthritis of the left knee in 2002. Thus, Mr. Jones did not know or should not have known the critical facts

about his left knee injury until 2002 and July 19, 2001, at the earliest. Therefore, the claims for the injuries sustained to the knees are not time-barred as a matter of law.

### Neck, back, wrist

■ Mr. Jones claims that the injury to his neck is cervical disk disease, and the injuries to his lower back and wrists are chronic pain. The medical records show a disk protruding from Mr. Jones's neck in the 1990's, which was resolved within three months. The medical record does not show problems with his back and wrists until after his car accident in 2000, which were characterized as sprains. These sprains resolved in almost a month; the medical record supports this stating, "Thoracic spine reveals full range of motion without discomfort. Lumbar spine has full range of motion with no discomfort. . . . Left wrist reveals full range of motion with no tenderness." The medical records indicate that the next time Mr. Jones experienced pain in these two body parts was in 2002. Furthermore, Mr. Jones started experiencing these symptoms in 2002, so there is no question that the injuries to the back and wrists were within the three-year deadline. KCS also relied on Mr. Jones statement to another doctor that he had tendonitis in the wrists to support a finding that Mr. Jones knew or should have known his wrists were permanently injured. That statement does not indicate that he had the condition in the past but rather that he was experiencing it in 2004 at the time of the examination. Accordingly, the only issue that requires further analysis is whether Mr. Jones was armed with critical facts of both his neck injury and its cause being work-related.

Mr. Jones argues that although his medical record shows disk protrusion in 1990, it does not reflect a diagnosis of cervical disk disease. He claims that he did not suffer any more pain from the neck after treatment until ten years later, and thus, the previous neck pain was transient. KCS claims that the pain was not transient because his physician diagnosed him with permanent disk disease and Mr. Jones indicated that he was diagnosed with disk disease in 1990 to another doctor. And he indicated on his disability application that the cervical disk disease began to affect his work in 1995 and that discomfort to his neck was part of the reason for his transfer in 1999.

The medical records reveal that his doctor did not diagnose him with cervical disk disease in 1990. Rather, his doctor told him that he had a disk protrusion at the right of his neck. The medical records in 2000, state that Mr. Jones "had a previous cervical disc problems in the past that resolved with some traction." The admissions to other "treating physicians" about his cervical disk disease do not show that Mr. Jones knew that he had cervical disk disease. One of the physicians examined Mr. Jones and in his letter to the U.S. Railroad Retirement Board, stated that Mr. Jones "has a history of cervical disk disease since 1990." Cervical disk disease is not mentioned as a prior medical condition in the other physician's medical history of Mr. Jones. Neither these documents nor the disability application shows that Mr. Jones knew or should have known critical facts about his neck injury. Thus, KCS has not shown that Mr. Jones knew or should have known about his neck injury prior to June 9, 2001, as a matter of law.

### Conclusion

In conclusion, our review of the record reveals that Mr. Jones suffered from several injuries in the course of working for KCS. Yet, the record does not show as a matter of law that Mr. Jones knew or

should have known his injuries were permanent or that they were work-related before June 9, 2001. This is a clear issue of material fact that a jury should decide. The summary judgment is reversed, and this case is remanded for trial.

HAROLD L. LOWENSTEIN, P.J., and JOSEPH M. ELLIS, J. concur.