John N. JOHNSON, Plaintiff–Appellee,

v.

NATIONAL RAILROAD PASSENGER CORP., a/k/a Amtrak, Defendant–Appellant.

No. 98CA0909.

Colorado Court of Appeals, Div. I.

Sept. 30, 1999.

Rossi, Cox, Kiker & Inderwish, P.C., John J. Rossi, Janet S. Drake, Aurora, Colorado, for Plaintiff–Appellee.

Hall & Evans, L.L.C., C. Willing Browne, Malcolm S. Mead, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge METZGER.

In this Federal Employers' Liability Act (F.E.L.A.), 45 U.S.C. 51, et seq. (1994), action, defendant, National Railroad Passenger Corporation (Amtrak), appeals the judgment entered on a jury verdict finding it liable and awarding damages for the injury of one of its employees, plaintiff, John N. Johnson. We affirm.

On July 19, 1995, plaintiff, employed as a conductor, was scheduled to work on a train from Denver to Grand Junction and points west; however, because of a train derailment, his train was detoured to the Winter Park/Fraser area. There, Amtrak's train manager instructed plaintiff and the two other Amtrak employees on the train to unload all of the baggage consisting of from 300–600 pieces.

Amtrak's service manager in Denver sent several baggage handlers from Denver to assist in this task, but this information was not conveyed to plaintiff and his co-workers. The Denver baggage handlers arrived after the work was "mostly done" and after plaintiff's injury.

The Winter Park/Fraser station had no baggage carts, even though employees had made several requests that they be provided. These requests were made because the floors of the railroad cars were five to six feet above the station platform. This disparity required the person in the train to "bend way over to hand the luggage" to the person on the platform, who had to reach over his head to grab it.

Plaintiff was the person in the train who handed the pieces of luggage down to his co-workers. After approximately two hours of steady unloading, plaintiff felt a sharp pain in his right groin and was forced to stop working.

After he received several months of medical treatment, plaintiff's condition was diagnosed as idiopathic avasular necrosis of the right femoral head (idiopathic AVN). One consequence of that condition was that plain-

tiff underwent right total hip replacement surgery almost a year after the accident. Although he may need additional hip replacement surgeries in the future, he has resumed his work as a conductor for Amtrak.

Thereafter, plaintiff brought this action, contending that Amtrak had failed to provide a safe place to work; that it had failed to institute, oversee, and carry out reasonably safe procedures with regard to the movement of luggage from its train; and that it had failed to provide adequate equipment for luggage removal.

Amtrak denied its negligence and also asserted, as an affirmative defense, that plaintiff was negligent.

After a trial, the jury awarded plaintiff $548,200 in damages.

## I.

Amtrak first contends the trial court committed reversible error in refusing its proposed jury instruction on the issue of foreseeability. We disagree.

Amtrak's tendered instruction provided:

The negligence, if any, of the defendant ... is not a cause of any injuries or damages to the plaintiff ... unless injury to a person in the plaintiff's situation was a reasonably foreseeable consequence of that negligence. The exact or precise injury need not have been foreseeable, but it is sufficient if a reasonably careful person, under the same or similar circumstances, would have anticipated that injury to a person in the plaintiff's situation might result from the defendant's conduct.

If the instructions, when read as a whole, adequately and correctly inform the jury of the law, there is no error in giving such instructions. *Felder v. Union Pacific R.R. Co.*, 660 P.2d 911 (Colo.App.1982). Unless a trial court's refusal to give a tendered instruction results in substantial prejudicial error, the judgment will not be reversed. *Armentrout v. FMC Corp.*, 842 P.2d 175 (Colo.1992).

In F.E.L.A. cases, courts apply federal interpretations of the Act in determining the substantive rights of the parties. *Felder v. Union Pacific R.R. Co., supra.* The issue of the reasonable foreseeability of harm to the plaintiff is an element of F.E.L.A. negligence. *See Betoney v. Union Pacific R.R. Co.*, 701 P.2d 62 (Colo.App.1984).

The determination of a defendant's duty and the foreseeability of harm as creating a duty under F.E.L.A. are questions of fact to be determined by the jury. An instruction on this issue in the following form is sufficient:

Negligence is the failure to observe that degree of care which people of ordinary prudence and sagacity would use under the same or similar circumstances; and that defendant's duty was measured by what a reasonably prudent person would anticipate as resulting from a particular condition—'defendant's duties are measured by what is reasonably foreseeable under like circumstances'—by what 'in the light of the facts then known, should or could reasonably have been anticipated.'

*Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 118, 83 S.Ct. 659, 665–666, 9 L.Ed.2d 618, 626 (1963).

Here, the jury was instructed:

Because the amount of care exercised by a reasonably prudent person varies in proportion to the danger known to be involved in what is being done, it follows that the amount of caution required, in the use of ordinary care, will vary with the nature of what is being done, and all the surrounding circumstances shown by the evidence in the case. To put it another way, as the danger that should reasonably be foreseen increases, so the amount of care required by law also increases.

Another instruction provided: "The extent of the employer's duty is to exercise ordinary care, under the circumstances, to see that the place [in] which the work is to be performed is reasonably safe, under the circumstances shown by the evidence in the case."

The clear import of these instructions is that, if danger cannot be reasonably foreseen by Amtrak, then the law does not impose any liability. The jury would have understood that Amtrak's duty is limited by what, under

the circumstances of the case, was foreseeable.

Thus, Amtrak's proposed instruction, which sets forth the same principles in different words, was not essential to the case. *See Mohler v. Park County School District Re-2,* 32 Colo.App. 388, 515 P.2d 112 (1973). Therefore, the trial court's refusal to give the tendered instruction could not have caused Amtrak substantial prejudicial error. *Armentrout v. FMC Corp., supra.*

We reject Amtrak's assertion that the trial court's instructions on negligence, ordinary care, and safe place to work are insufficient in light of the decision in *Betoney v. Union Pacific R.R. Co., supra,* which held that instructions on those concepts were insufficient to incorporate the concept of foreseeability. The language of its instructions is not contained in the *Betoney* decision; thus, it would be speculation on our part to say that the instructions deemed to be insufficient in *Betoney* are identical to those here.

Additionally, we note that the *Betoney* decision required the jury to be instructed that foreseeability is an element of F.E.L.A. negligence. The instructions here, read as a whole, fulfilled that requirement.

Accordingly, we find no error.

## II.

Amtrak next argues the jury's damage award was excessive. It asserts the jury ignored uncontradicted medical testimony and was motivated by passion and prejudice. We perceive no basis for altering the jury's verdict.

## A.

■ A jury verdict will not be reversed on appeal if the record contains a basis for supporting it. *See Nutting v. Northern Energy, Inc.,* 874 P.2d 482 (Colo.App.1994).

■ Amtrak's argument rests on its assumption that the expert testimony of the surgeon, who performed plaintiff's right total hip replacement, was uncontradicted and shows that plaintiff's injury was the result of preexisting avascular necrosis (AVN). The record does not support Amtrak's view of the testimony.

At one point in his testimony, the surgeon opined that plaintiff had probably suffered from AVN before the accident. However, he also repeatedly testified that his diagnosis of plaintiff's condition was "idiopathic AVN." That means, the surgeon said, that it is impossible to know to a reasonable degree of medical probability either the cause of plaintiff's AVN or whether it existed before the accident.

Since the surgeon's testimony provided conflicting views from which the jury could have decided that plaintiff's AVN was either preexisting or that it was caused by the accident, the jury had a basis for deciding as it did.

## B.

■ Amtrak further argues that, because the jury's damage award conflicted with the surgeon's apportionment testimony, it showed passion, prejudice, and/or disregard for this medical testimony. In particular, Amtrak points out that plaintiff was awarded $548,200, roughly 85 percent of the amount of damages requested, in spite of the surgeon's testimony that the trauma suffered during the luggage unloading was only 25 percent of the causal need for the surgery. Again, we find no basis for reversal.

■ Essentially, Amtrak's assertion is that the evidence is insufficient to support the verdict. When resolving that question, we must determine whether all the evidence and its inferences, when viewed as a whole and in a light most favorable to the verdict, are substantial and sufficient to support the jury's determination. *Bohrer v. DeHart,* 961 P.2d 472 (Colo.1998).

In response to a hypothetical question, the surgeon testified that, if plaintiff's AVN were preexisting, then 25 percent of the causal need for the surgery would have been from the luggage unloading. However, the surgeon also testified that he could not say to a reasonable degree of medical probability that plaintiff's AVN was preexisting. Therefore, the jury could have found, with record support, that plaintiff's AVN was not preexist-

ing; thus, it could have determined that the need for surgery was entirely due to the accident.

And, even if the jury did base its verdict on the view that plaintiff had had AVN before the accident, the record would support that determination. On at least two occasions in his testimony the surgeon suggested that plaintiff's preexisting AVN may have healed on its own but for the trauma he sustained during the luggage unloading.

According to the surgeon's testimony, a spontaneous recovery occurs in only 10 to 15 percent of AVN cases. Consequently, the jury could have decided that, if plaintiff had had preexisting AVN, his condition would not have required surgery but for the trauma sustained during the incident at issue.

In either event, the jury's verdict had a basis in the evidence and may not be disturbed.

### III.

Last, Amtrak contends it was prejudiced by the admission as impeachment evidence of non-disclosed medical articles after the cross-examination of Amtrak's expert medical witness. We do not agree.

Even if we assume, without deciding, that the foundation was inadequate and that the articles should not have been admitted because of that deficiency, reversal is not required.

█ A trial court's determination of the probative value and prejudicial impact of proffered evidence is afforded considerable deference and will not be disturbed on review absent an abuse of discretion. Only if the admission of evidence is manifestly arbitrary, unreasonable, or unfair and causes prejudice will the trial court's decision provide a basis for reversal. *See Hock v. New York Life Insurance Co.*, 876 P.2d 1242 (Colo.1994).

█ The admission of cumulative evidence, in and of itself, is not reversible error. *Miller v. Solaglas California, Inc.*, 870 P.2d 559 (Colo.App.1993).

█ As the trial court noted here, the ideas contained in the articles had been dis-

cussed in previous expert testimony. Thus, to some extent, the information in the articles was cumulative. Further, during his cross-examination and re-direct examination, the expert witness stated that the content of the articles did not apply to plaintiff's situation.

Thus, since there is no indication that the trial court's ruling, admitting the articles for impeachment, caused prejudice, no abuse of discretion occurred.

█ Nor are we persuaded that plaintiff's failure to disclose the articles in discovery precluded their admission.

In his deposition taken shortly before trial, the witness had testified that he had not researched any articles concerning trauma and AVN. Then, for the first time at trial, the witness testified on direct examination that he had researched the subject in the interim and had found no cases in which minor trauma caused AVN. This fact had not been disclosed by Amtrak in discovery.

On cross-examination, plaintiff's counsel questioned the witness about the two articles. The witness agreed that the treatises in which the articles appeared were reliable. And, after being allowed to review the articles, he was questioned extensively on cross-examination and redirect examination about them. Given these circumstances, plaintiff's failure to disclose the articles did not preclude their admission. *See* CRE 607; *see also* C.R.C.P. 26.

█ Finally, Amtrak objects to the fact that the articles contained underlining when they were admitted into evidence.

█ Altered or marked-up documents are admissible as evidence if a satisfactory explanation of the alterations is made before their admission. *See People v. Wolfe*, 662 P.2d 502 (Colo.App.1983). Indeed, the "Report of the Colorado Supreme Court Committee on the Effective and Efficient Use of Juries," which was adopted in principle by the supreme court in February 1997, recommends: "The court should adopt procedures that would allow important exhibits to be highlighted or otherwise marked to direct

jurors' attention to significant parts of an exhibit." *See also CJI–Civ.* 3:17 (1999).

Here, the jury heard Amtrak's objections to the admission of the highlighted articles as well as plaintiff's response that the markings simply showed sections where minor trauma and its possible connection to AVN were discussed. This explanation was satisfactory. Further, Amtrak did not request that unmarked copies of the articles be substituted, nor did it request a limiting instruction. Consequently, no error occurred.

The judgment is affirmed.

Judge CRISWELL and Judge DAVIDSON concur.