# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-2037

DEBRA A. GREEN,

*Plaintiff-Appellant,*

v.

CSX TRANSPORTATION,
INCORPORATED,

*Defendant-Appellee.*

———————

Appeal from the United States District Court for
the Southern District of Indiana, Evansville Division.
No. 02 C 194—**Richard L. Young,** *Judge.*

———————

ARGUED DECEMBER 2, 2004—DECIDED JULY 8, 2005

———————

Before BAUER, POSNER and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Debra Green sued her employer, CSX Transportation, Inc. ("CSX"), for negligence when she sustained injuries to her shoulders while performing her job duties. The district court granted judgment in favor of CSX because Green failed to file her claims within the statute of limitations. Because there are genuine issues of fact relating to when Green sustained her injuries and whether her employer was negligent, we vacate and remand for trial.

## I.

Debra Green began working for CSX in 1979. Although her job title changed over the years, Green has been a "utility worker" since 1981. As a utility worker, Green cleans and services locomotives. One of her job duties involves loading sand into compartments on the locomotives in a process known as "sanding." When the locomotives are in use, this sand can be released onto the tracks to provide traction for the vehicle's wheels. Most locomotives have two sand compartments (known as boxes) with intake holes on top of the car at the front and rear. CSX uses a gravity feed system to load sand into the boxes. The system consists of large hoses which must be placed into the locomotive's intake holes. The hoses are filled with sand and are typically heavy and awkward to handle. In order to sand a locomotive, a utility worker positions the locomotive beneath the gravity feed system, climbs a ladder attached to the locomotive, and while holding the ladder with one hand, uses the other hand to lift and guide the hose into position. The worker then pulls a lever to release sand into the box.

On January 18, 2000, Green was up on the ladder preparing to sand a locomotive.[1] She was holding onto the ladder with her left hand when she reached for the hose with her right hand. As she began to lift and place the hose, she felt pulling and pain in her right shoulder and upper back. She immediately released her hold on the hose, climbed down off the locomotive and went to the office to report her injury. When filling out a CSX Unsafe Condition Report on

---

[1] There is some question as to whether this incident occurred on January 18 or January 19 because the reports filled out at the time of the incident reflect both of these dates. Because the case comes to us on summary judgment, we will use the date provided by the plaintiff, who is opposing judgment. For the purposes of the appeal, the one-day difference is irrelevant in any case.

the incident, she noted that the hose was too heavy and too long, making it unsafe. After Green reported this incident to CSX management, one of her supervisors, George Kendle, filled out an "Employee Incident/Injury Root Cause Analysis Report" ("Incident Report") and also a "Mechanical Operations Near Miss Report" ("Near Miss Report"). On the Incident Report, Kendle listed "over exertion" as the accident type. R. 35, Ex. 5. In response to a request to describe the nature and severity of the injury, he reported that Green had suffered "strain to right inner shoulder." *Id.* He described the sequence of events similarly to Green's report; she had been attempting to place the sand hose into the intake hole of the sand box when she felt pain in her right shoulder. He identified the "root cause" of the incident as "pulling and lifting sand hose with one hand," which he explained was necessary because Green was using her other hand to hold onto the ladder. He further explained that because the sand fill on the rear of the locomotive was on top of the car body and because the facility used a gravity feed system to sand the cars, this was the only way to sand the car. *Id.* On the Near Miss Report, he specified that Green had been sanding the rear box of an engine when she felt pain in her right shoulder. R. 35, Ex. 4.

Two days later, Green went to her family physician, Theresa Beckman, for treatment. Dr. Beckman found that Green had a reduced range of motion for her right arm and was tender over the supraspinatus muscle of her right shoulder. She diagnosed the injury as "acute supraspinatus strain versus tear" and prescribed Vioxx, an anti-inflammatory medication, and Lortab, a narcotic pain medication. R. 35, Ex. 8, at 21. Dr. Beckman referred Green to an orthopaedic surgeon, Ronald Sowa. Dr. Sowa examined Green on January 24. Dr. Sowa's notes of that meeting reflect that "Debra was at work a couple weeks ago at the railroad yard holding up on a diesel engine with her left arm reaching out with her right arm to grab something

when she felt a pain and pull in her shoulder." R. 35, Ex. 8, at 24. Dr. Sowa ordered an MRI of Green's right shoulder and prescribed a course of physical therapy. Green completed the physical therapy and continued to work as a utility worker at CSX, but stopped working on July 21, 2000 on the advice of Dr. Sowa. Dr. Sowa performed surgery on Green's shoulder in August of that year, ultimately diagnosing the problem as rotator cuff syndrome of the right shoulder. R. 39, Ex. N. Following surgery, Dr. Sowa prescribed another extensive course of physical therapy and advised Green not to work until March 2001. All in all, Green missed approximately eight months of work due to this injury.

Green had reported some shoulder pain to other doctors on other visits over the years. In 1988, she saw Dr. Randall Oliver for pain in her left shoulder. Dr. Oliver noted that Green also had a history of right shoulder pain when cold. He diagnosed the problem as bursitis and prescribed Tolectin DS, a non-steroidal anti-inflammatory medication. Five years later, on September 13, 1993, she visited Dr. Allega for head congestion and a cough. The diagnosis was bronchitis and sinusitis. The main focus of the medical record that day is on symptoms and treatment related to that diagnosis but Dr. Allega also noted that day that Green was "having some shoulder discomfort on the right side and thinks she may have sprained the shoulder at work." For that visit, this single sentence is the only mention of Green's shoulders. She returned to Dr. Allega five months later on February 25, 1994, for shoulder pain and intermittent lower abdominal pain. In the clinic notes taken that day, Dr. Allega reported, in relevant part:

> Mr. [sic] Green is seen today with two problems. She said that she is having right shoulder pain. She has had no trauma. She does use the arm at work. She works on locomotives for the railroad and also works at the Sizzler.

> EXAM She has some tenderness over the medial aspect of the shoulder. Have not noticed any deformities. She has full range of motion. Did not notice any crepitance.
>
> A: Probable tendinitis [sic].

R. 39, Ex. J. For this problem, Dr. Allega prescribed Voltaren, another non-steroidal anti-inflammatory drug. Dr. Allega diagnosed the abdominal pain as menstrual cramps and prescribed Voltaren for that pain as well. Green's medical records contain no other references to shoulder pain until the January 18, 2000 injury that prompted this lawsuit.

In 1997, one of Green's co-workers, Keith Combest, submitted an informal complaint to CSX about the sanding system. Combest's handwritten letter stated, in relevant part:

> 2nd shift hostler helper Debbie Greene [sic] also hostler helper Nancy Hasslebrock also Kim Maddox & myself Keith Combest have recently had some discomfort in our right shoulder's [sic], pretty much amazingly in the same spot on our shoulder's[sic]. Our sanding system here is such that when you climb up on rear end of eng's you have to hang on with left hand & pick sand hose that is full up with your right hand & arm about a foot & put in hole.

R. 31, Ex. E. Combest went on to ask how much the hose weighed when filled with sand. He inquired whether there was a different way to hook up the hose, perhaps another way to lift it in and out of the intake hole or whether a counterweight could be utilized to ease the lifting of the hose.

On October 15, 2002, Green filed a two-count complaint against CSX under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51, et seq. Count I alleged that CSX's negligence caused injury to Green's right shoulder in the

incident on January 18, 2000. Count II alleged that due to CSX's negligence, Green suffered injuries to both shoulders as a result of cumulative and repetitive trauma during her work for CSX. Green alleged that she became aware of these cumulative injuries to both shoulders during the three years prior to the filing of the complaint. CSX moved for summary judgment on Count I in its entirety and on Count II to the extent it pertained to Green's right shoulder on the grounds that those claims were barred by the FELA's three-year statute of limitations. The district court granted judgment in favor of CSX on those claims, finding that Green was aware of cumulative work-related injuries to her right shoulder beginning in 1997, more than three years before she filed this action against CSX. The parties subsequently settled the remaining claim in Count II related to cumulative injury to Green's left shoulder. The court then dismissed that claim, making the earlier partial summary judgment a final, appealable judgment. Green then appealed.

## II.

On appeal, Green maintains that the district court erred in granting judgment on Count I on statute of limitations grounds because the injury she suffered on January 18, 2000 was a new and distinct injury and not merely a progression or aggravation of prior injuries to her right shoulder. She similarly argues that the district court erred in granting judgment on Count II because she did not know that she had suffered a cumulative injury nor that her railroad employment was the cause of that injury until less than three years before the filing of the complaint. We review *de novo* the district court's order granting summary judgment, viewing the facts and making all reasonable inferences that flow from them in the light most favorable to the non-moving party. *Corley v. Rosewood Care Center, Inc.*

*of Peoria*, 388 F.3d 990, 1001 (7th Cir. 2004); *Gil v. Reed*, 381 F.3d 649, 658 (7th Cir. 2004). Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, demonstrate that there is no genuine issue of material fact for trial and that the moving party is entitled to judgment as a matter of law. *Corley*, 388 F.3d at 1001. Section 1 of the FELA renders common carrier railroads "liable in damages to any person suffering injury while . . . employed by [the] carrier" if the "injury or death result[ed] in whole or in part from the [carrier's] negligence." *Norfolk & Western Ry. Co. v. Ayers*, 538 U.S. 135, 144-45 (2003); 45 U.S.C. § 51. Congress designed the FELA to "shif[t] part of the 'human overhead' of doing business from employees to their employers." *Ayers*, 538 U.S. at 145 (quoting *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 542 (1994)).

## A.

We begin with Green's claim in Count II for injury to her shoulder caused by repetitive and cumulative trauma from her job. The FELA provides that "[n]o action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued." 45 U.S.C. § 56. The district court noted that Green filed her suit on October 15, 2002 and thus "must show that she first began experiencing shoulder symptoms after October 15, 1999, or did not suspect that her should[er] symptoms were related to her railroad employment until after October 15, 1999." Entry on Defendant's Motion for Partial Summary Judgment and Motion for Leave to File Surreply Affidavit ("Entry on Motion"), December 31, 2003, at 7. The court found that Green "knew she had right shoulder problems as far back as 1997, if not earlier." *Id.* The medical records from 1994 indicated that Green used her arm at work, the

court reasoned, and thus Green was aware that her problems could be work-related as of 1994. The court also found that the 1997 letter from Keith Combest to CSX provided evidence that Green knew she was having work-related shoulder pain as of 1997 at the latest. The court concluded that Green's cause of action for cumulative injury accrued as of 1997 and thus her 2002 complaint was barred by the statute of limitations. Entry on Motion, at 9.

In an FELA case, a cause of action accrues for statute of limitations purposes when a reasonable person knows or in the exercise of reasonable diligence should have known of both the injury and its governing cause. *Tolston v. National R.R. Passenger Corp.*, 102 F.3d 863, 865 (7th Cir. 1996); *Fries v. Chicago & Northwestern Transportation Co.*, 909 F.2d 1092, 1095 (7th Cir. 1990). The question here is whether the evidence, read in a light most favorable to Green, creates a genuine issue on whether a reasonable person knew or with reasonable diligence should have known before October 15, 1999 not only that she had suffered this cumulative injury to her right shoulder but also that the injury was caused by her work at the railroad. When the specific date of injury cannot be determined because an injury results from continual exposure to a harmful condition over a period of time, a plaintiff's cause of action accrues when the injury manifests itself. *Fries*, 909 F.2d at 1094 (citing *Urie v. Thompson*, 337 U.S. 163 (1949)).

We believe that Green has sufficient evidence to create a genuine issue of fact on this issue. Recall that the only evidence of shoulder injury before that time were a few references to shoulder pain in Green's medical records and a co-worker's claim in a letter to CSX. Specifically, in 1988, when Green sought treatment for pain in her left shoulder, her physician noted that she also had a history of pain in her right shoulder when she was cold. In 1993, Green went to the doctor for head congestion and a cough. Her doctor noted that she was "having some shoulder discomfort on the

right side and thinks she may have sprained the shoulder at work." The doctor diagnosed the problem as bronchitis and sinusitis and treated those conditions and nothing else. In 1994, Green saw her physician for right shoulder pain and abdominal pain. That doctor diagnosed "probable tendonitis" and "menstrual cramps" and prescribed Voltaren, a non-steroidal anti-inflammatory, for both problems. In 1997, her co-worker, Keith Combest, reported to CSX that he and some of his fellow utility workers, had "recently" experienced some discomfort in their right shoulders. He noted they all felt this discomfort in the same spot on the shoulder and that he tied it to the sanding system at CSX. On only one of these four occasions did Green seek medical treatment for right shoulder pain, in 1994 when she was diagnosed as having tendonitis, a condition that was apparently so mild that her doctor treated it with the same anti-inflammatory he prescribed for menstrual cramps. On none of these occasions is there evidence that Green suffered the same injury or a precursor to the cumulative injury she claimed in her complaint. And finally, there is no evidence that any of these reports related to a right shoulder injury serious enough to put Green on notice that it was time to sue her employer or lose her right to do so:

> It is not the law that if you are scratched as a result of someone's negligence or other tort you must sue, even though the scratch is trivial, against the possibility that it might develop into something serious after the period of limitations has run. "Presumably there is room for a *de minimis* concept where there has been some tortious impact but such inconsequential manifestations that a reasonable person would not consider he was either injured or that it was appropriate to make inquiry."

*Lancaster v. Norfolk & Western Ry. Co.*, 773 F.2d 807, 821 (7th Cir. 1985), *cert. denied*, 480 U.S. 945 (1987) (quoting *Nivens v. Signal Oil & Gas Co., Inc.*, 520 F.2d 1019, 1024 (5th Cir.) (modified on other grounds, 523 F.2d 1382 (5th

Cir. 1975))). Construing the record in favor of Green, her shoulder pain prior to October 1999 may have been little more serious than a scratch, failing to put a reasonable person on notice that she had suffered a cognizable injury and must sue or risk losing her right to do so. Her situation is certainly distinguishable from that of the plaintiff in *Tolston*. Tolston suffered from extreme, chronic pain in her knee for six years before she brought suit. In fact, Tolston had a total knee replacement more than three years before filing suit for work-related injury to the affected knee. *Tolston*, 102 F.3d at 866-67. In contrast, Green suffered intermittent pain in her shoulder for which she sought treatment on only one occasion without missing any work prior to the January 18, 2000 injury. Green's shoulder issues were not on the same scale as Tolston's knee problems and may not have been sufficient to put a reasonable person on notice that she had suffered a cognizable work-related injury. Green is entitled to have a jury decide whether and when a reasonable person in her circumstances would have realized she had suffered more than a *de minimis* cumulative injury to her right shoulder and that the injury was work-related.

## B.

We turn to Green's claim for injury to her right shoulder in the January 18, 2000 incident. This injury is subject to the same statute of limitations that governs Green's cumulative injury. Again, the FELA provides that "[n]o action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued." 45 U.S.C. § 56. Although Green brought this cause of action less than three years from the January 18, 2000 incident, the district court found that the injury Green sustained that day was merely a progression or aggravation of prior work-related injuries to her shoulder. The court noted

that Green was performing the same sanding work she performed other times and was using the same equipment she had previously used at the time of the injury. The court concluded that "[a]lthough the pain she experienced on January 18, 2000, was more intense in her right shoulder than the pain she had previously experienced, this progression or aggravation of the cumulative trauma is not a separable cause of action under the FELA." Entry on Motion, at 11. Because the court considered the January 18, 2000 injury a progression of earlier injuries, the court ruled that Count I was barred by the three-year statute of limitations.

Construing the record in favor of Green as we must on summary judgment, Green suffered a new and distinct injury on January 18, 2000 and the statute of limitations clock was not triggered for this injury until that day. The defendant points to no evidence in the record supporting the idea that Green's injury that day was merely an aggravation of any prior injury. Instead, the evidence seems to support the opposite conclusion. Green described lifting the sand hose that day and experiencing a pain unlike any other she had experienced in her work. She immediately sought treatment and received a diagnosis different from any prior diagnosis of shoulder pain. Her treatment consisted of physical therapy, surgery and more physical therapy, resulting in an eight-month absence from work. CSX points to no other occasion where Green suffered an injury to her shoulder so severe that she missed any work much less eight months' worth. Moreover, it is irrelevant that Green was performing the same work she had been performing for years in same manner and with the same equipment at the time of her injury. This fact makes it no more or less likely that the injury suffered was an aggravation or a new injury and in any case cannot be construed against Green on summary judgment.

## C.

CSX argues in the alternative that Green's injuries were not caused by its negligence and that the company is entitled to judgment on this basis as well. Because it granted judgment on statute of limitations grounds, the district court did not address this alternate argument. We may affirm the judgment based on any ground found in the record, and we therefore will address CSX's argument, which the parties have fully briefed in this court. The intent of the FELA is to provide broad remedial measures for railroad employees. *Walker v. Northeast Regional Commuter R.R. Corp.*, 225 F.3d 895, 897 (7th Cir. 2000); *Williams v. National R.R. Passenger Corp.*, 161 F.3d 1059, 1061 (7th Cir. 1998); *Fulk v. Illinois Central R.R. Co.*, 22 F.3d 120, 124 (7th Cir.), *cert. denied*, 513 U.S. 870 (1994). A railroad will thus be held liable if the employer's negligence played any part, even the slightest, in producing the injury. *Walker*, 225 F.3d at 897; *Williams*, 161 F.3d at 1061; *Fulk*, 22 F.3d at 124. A plaintiff's burden in an FELA action is therefore significantly lighter than it would be in an ordinary negligence case. *Williams*, 161 F.3d at 1061; *Fulk*, 22 F.3d at 124. Indeed, some of our cases have noted examples of FELA cases submitted to juries based upon evidence "scarcely more substantial than pigeon bone broth." *Williams*, 161 F.3d at 1061 (quoting *Harbin v. Burlington Northern R.R. Co.*, 921 F.2d 129, 132 (7th Cir. 1990)). As light as this burden is, the plaintiff must still present some evidence of negligence in order to survive a motion for summary judgment. *Walker*, 225 F.3d at 897. Specifically, the plaintiff must offer evidence creating a genuine issue of

fact on the common law elements of negligence, including duty, breach, foreseeability, and causation.[2] *Williams*, 161 F.3d at 1062; *Fulk*, 22 F.3d at 124.

CSX argues that Green has failed to produce evidence that the company breached its duty to its employees, maintaining that it provided a reasonably safe method to sand the locomotives. CSX asks us to discount the report of Green's expert, Sheree Gibson, a professional industrial ergonomist. According to CSX, Gibson relies on circumstances that were not present the day of the injury. Gibson opined that the sanding system presented two serious safety hazards to workers: "the risk of a fall from the top of the locomotive and the risk of a musculoskeletal disorder such as shoulder strain, rotator cuff tear, or upper back disorder from the need to apply high forces while in an awkward posture (shoulder abduction)." She noted that this posture occurred when lifting the hose into the fill spout of the rear sand compartment of the locomotive. CSX complains that Green was not "lifting" the hose at the time of her injury but simply testified she was pulling the hose toward herself. CSX also notes that Gibson initially applied her opinion to wide-body locomotives and the engine that Green was sanding was not a wide-body.

These arguments are both factually and legally faulty. First, Gibson supplemented her report to specify that her opinions applied to all locomotives, not just the wide-body type to which she first referred in her report. Secondly, CSX mischaracterizes the evidence regarding Green's motions at the time she was injured. She testified that she "reached out

---

[2] Consistent with its broad remedial purpose, the FELA abolished a number of traditional defenses to liability, including the fellow-servant rule, contributory negligence and assumption of risk. *Williams*, 161 F.3d at 1061. None of these defenses are at issue in this appeal.

to get the sand hose to pull it towards" herself. When questioned about what she meant, she confirmed that she was guiding the sand hose into the intake hole at the time of the injury. In the report she filled out for her employer at the time of the injury, she stated that she was holding onto the engine with her left hand and "reaching with [her] right hand to lift up [the] sand hose and put [it] in the hole of the engine." By her account, she was lifting and pulling the hose into the intake hole at the time of the injury. This comports with the type of situation the expert opined was a serious safety hazard. Gibson reported that, in her professional opinion, Green was exposed to "unreasonable, unnecessary, and hazardous levels of ergonomic risk factors associated with lifting the sand hose." Gibson went on to list the particular hazards as well as the steps that CSX could have and should have taken to minimize these risks. This is more than enough evidence to overcome CSX's motion for summary judgment. Because Green provided adequate evidence to survive summary judgment on the statute of limitations issue as well as the negligence issue, we vacate the judgment and remand the case for trial.

VACATED AND REMANDED.

A true Copy:
       Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*