2009 OK CIV APP 98

**Phillip KENNEDY, Plaintiff/Appellant,**

v.

**BNSF RAILWAY CORPORATION f/k/a Burlington Northern Santa Fe Railway Company, Defendant/Appellee.**

**No. 107,412.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Oct. 30, 2009.

---

Thomas M. Wright, Wright Stout & Wilburn, PLLC, Muskogee, OK, for Appellant.

Robert D. Hart, Jeff Fields, Oliver L. Smith, Christopher D. Wolek, Gibbs Armstrong Borochoff Mullican & Hart, P.C., Tulsa, OK, for Appellee.

JERRY L. GOODMAN, Judge.

¶ 1 Phillip Kennedy (Kennedy) appeals the trial court's July 15, 2009, order granting BNSF Railway Corporation's f/k/a Burlington Northern Santa Fe Railway Company (BNSF) motion for summary judgment. After review of the record on appeal and applicable law, we reverse and remand for further proceedings.[1]

## FACTS

¶ 2 Kennedy filed suit against BNSF on May 8, 2008, under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.* and the Locomotive Inspection Act, (LIA), 49 U.S.C. § 20701 *et seq.,* formerly known as the Boiler Inspection Act, 45 U.S.C. §§ 22–34.[2]  Kennedy alleged bilateral knee, neck, and back injuries as a result of cumulative and repetitive trauma during his employment

---

1.  Kennedy's motion for leave to submit an appellate brief is denied.

2.  An action brought pursuant to the Locomotive Inspection Act is prosecuted as an action under

FELA. *Campbell v. CSX Transportation, Inc.,* 892 So.2d 923 (Ala.Civ.App.2004).

for BNSF as a locomotive engineer. At his deposition, Kennedy asserted only bilateral knee injuries, which he contended were caused by getting on and off moving equipment, walking on ballasts, and riding on a rough seat.

¶ 3 In October of 2001, Kennedy was seen by Dr. Ogle for right knee pain. He was given Vioxx, an anti-inflammatory. An x-ray of Kennedy's right knee revealed progressive degenerative change with no definite acute abnormality. In November of 2001, Kennedy returned to Dr. Ogle where he asserted his right knee was much better, but that he would continue taking the anti-inflammatory for a recent foot injury. Kennedy ultimately had surgery for the foot injury with Dr. Fike. Kennedy returned to work with no restrictions. In June of 2002, Kennedy was involved in a car accident and the record provides he continued taking the anti-inflammatory. In August of 2003, Kennedy returned to Dr. Fike for left leg or knee pain.

¶ 4 In July of 2006, Kennedy returned to Dr. Fike complaining of bilateral knee pain. Dr. Fike's July 13, 2006, report provides:

[H]e is a train engineer, at this point he is getting ready to retire. He has been having a lot of problems with bilateral knees. He has had a number of years of pain associated with those. He says it has gotten worse over the last year or two. He has been on multiple anti-inflammatory medicines, has not had any injections, does not want to use canes or walkers. Hasn't tried any braces or other things. Says he is having a lot of trouble getting in and out of the engines because of this, but once is [sic] preparing to retire. He does have some rest pain, denies any groin pain, has no radicular symptoms. At this point he comes in to see me.

. . .

X–RAYS: of his knees are reviewed. He has complete medial joint space loss bilaterally with sclerosis and early osteophyte formation. There is no significant change of the lateral joint that are seen.

¶ 5 Dr. Fike diagnosed Kennedy with degenerative joint disease and noted that his x-rays revealed, *inter alia*, complete medial joint space loss bilaterally. Steroid injections were performed over the next several months. In January of 2008, Kennedy underwent a total right knee arthroplasty.

¶ 6 The record further provides Kennedy was morbidly obese since his 30's and that the "excess weight was wearing out his joints." Kennedy underwent a gastric banding surgery in 2007 and lost a significant amount of weight. Kennedy acknowledged that his knees felt better after losing the weight.

¶ 7 BNSF filed a motion for summary judgment on the grounds Kennedy's claims under the FELA and LIA were barred by FELA's three (3) year statute of limitations because Kennedy knew or should have known his bilateral knee injury was work-related no later than October of 2001 and was therefore required to file no later than October 2003. The trial court agreed Kennedy's claim was barred by FELA's statute of limitations and granted BNSF's motion by order dated July 15, 2009, finding Kennedy "had reason to know back in 2001" that his bilateral knee injury was related to his employment.

STANDARD OF REVIEW

¶ 8 We review a trial court's grant of summary judgment *de novo*. *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. On review, we examine the pleadings and evidentiary materials submitted by the parties to determine whether there exists a genuine issue of material fact. *Id.* This Court bears an "affirmative duty ... to test for legal sufficiency all evidentiary material received in summary process in support of the relief sought by the movant." *Reeds v. Walker*, 2006 OK 43, ¶ 9, 157 P.3d 100, 106. Further, the evidentiary materials and the inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *Hargrave v. Canadian Valley Elec. Co-op., Inc.*, 1990 OK 43, ¶ 14, 792 P.2d 50, 55.

¶ 9 In FELA cases, courts apply federal law interpreting the Act to determine the substantive rights of the parties. *Nichols v. Burlington Northern Santa Fe R.R.*, 56 P.3d

106, 108, (citing *Johnson v. Nat'l R.R. Passenger Corp.*, 989 P.2d 245 (Colo.App.1999)). Close cases under FELA should be allowed to proceed to trial. *Id.*, (citing *Bailey v. Cent. Vt. R.R.*, 319 U.S. 350, 354, 63 S.Ct. 1062, 87 L.Ed. 1444 (1943)("To deprive [railroad] workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them.")).

## ANALYSIS

¶ 10 Congress enacted FELA to provide a federal remedy for railroad workers who suffer personal injuries as a result of the negligence of their employer or fellow employees. *Atchison, Topeka and Santa Fe Railway Co. v. Buell*, 480 U.S. 557, 561, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987). "FELA law is a hybrid. It hovers ambivalently between workers' compensation law and the common law tort of negligence. It is neither, but it partakes of characteristics of both." *CSX Transp., Inc. v. Miller*, 159 Md.App. 123, 858 A.2d 1025, 1028–29 (2004).[3]

■ ¶ 11 A FELA claim may be brought in state or federal court. *See* 45 U.S.C. § 56. However, "as a general matter, FELA cases adjudicated in state courts are subject to state procedural rules, but the substantive law governing them is federal." *St. Louis Southwestern Railway Company v. Dickerson*, 470 U.S. 409, 411, 105 S.Ct. 1347, 84 L.Ed.2d 303 (1985).

■ ¶ 12 LIA, on the other hand, imposes "an absolute duty" on railroad carriers to ensure that their locomotives are both properly maintained and safe to operate. *Matson v. Burlington Northern Santa Fe R.R.*, 240 F.3d 1233, 1235 (10th Cir.2001), (citing *King v. S. Pac. Transp. Co.*, 855 F.2d 1485, 1488 (10th Cir.1988)). LIA does not create an independent cause of action. The claim must

be brought under FELA. *Id.*, (citing *Feichko v. Denver & Rio Grande W. R.R. Co.*, 213 F.3d 586, 588 fn. 4 (10th Cir.2000)).

■ ¶ 13 To maintain a claim under FELA, the plaintiff must allege and prove the action was filed "within three years from the day the cause of action accrued." 45 U.S.C. § 56; see *Rohner v. Union Pac. R.R. Co.*, 225 F.2d 272, 274 fn. 2 (10th Cir.1955). The running of the statute of limitations for a FELA claim based on a cumulative injury is calculated under the discovery rule. *Nichols v. Burlington Northern & Santa Fe R.R.*, 56 P.3d 106, 109 (Colo.App.2002)(citing *Fonseca v. Consol. Rail Corp.*, 246 F.3d 585 (6th Cir.2001)). The discovery rule fixes accrual at the time the plaintiff first becomes aware of both: 1) the existence of an injury; and 2) the cause of the injury. *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). Accordingly, in an FELA case, a cause of action accrues for statute of limitations purposes when a reasonable person knows or, in the exercise of reasonable diligence, should have known of both the injury and its governing cause. *Green v. CSX*, 414 F.3d 758, 763 (7th Cir. 2005) (citations omitted). This rule requires an objective inquiry into when the plaintiff knew or, in the exercise of reasonable diligence, should have known the essential facts of the injury and its cause. *Nichols*, 56 P.3d 106, 109, (citing *Fries v. Chicago & Northwestern Transp. Co.*, 909 F.2d 1092 (7th Cir. 1990)).

■ ¶ 14 The "should have known" test, however, is not a "could have known" test. *CSX Transp., Inc. v. Miller*, 159 Md.App. 123, 858 A.2d 1025 (2004). "Rather, it requires a very substantial common-sense likelihood that a reasonably careful person would discover the existence of the injury and its

---

**3.** "Because the FELA does not impose on the railroads tort liability for injuries inflicted on the public generally, but is confined to liability for injuries suffered by employees in the course of their employment, it bears a strong resemblance to workers' compensation laws. It is not such, however. In *Consolidated Rail Corporation v. Gottshall*, 512 U.S. 532, 543, 114 S.Ct. 2396, 129 L.Ed.2d 427, the Supreme Court made that very clear:

"That FELA is to be liberally construed, however, does not mean that it is a workers' compensation statute. We have insisted that FELA 'does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur.' "
*CSX v. Miller*, 159 Md.App. 123, 858 A.2d 1025, 1031 (2004).

cause." *Id.*, (quoting *Rogers v. Illinois Cent. R.R. Co.*, 833 S.W.2d 426, 428 (Mo.App. 1992)). An employee's mere suspicion of an injury or its probable cause, standing alone, is not the operative standard for determining when a cause of action accrues under FELA. *CSX Transp., Inc. v. Bickerstaff*, 187 Md. App. 187, 978 A.2d 760 (2009), (citing *CSX v. Miller*, 159 Md.App. 123, 858 A.2d 1025 (2004), (quoting *Gay v. Norfolk and W. Ry. Co.*, 253 Va. 212, 483 S.E.2d 216, 219 (1997))). See e.g. *Reasons v. Union Pac. R.R.*, 886 S.W.2d 104 (Mo.Ct.App.1994)(Suspicion of a cause is not enough; a claimant must either know of the problem and the probable connection or ignore a problem that would be apparent to a reasonable person.) While a doctor's diagnosis is not necessary to know of an injury and/or its cause, there is a difference between an injury for which a claim of compensation can be filed and intermittent pain that is presumed to be temporary and is quickly resolved. See *Sabalka v. Burlington Northern & Santa Fe R.R.*, 54 S.W.3d 605 (Mo.Ct.App.2001); *Schaefer v. Union Pac. R.R.*, 10 F.Supp.2d 1240 (D.Wyo.1998).

▮ ¶ 15 On appeal, Kennedy asserts he did not learn his bilateral knee injury was related to his employment until his October 4, 2006, doctor visit with Dr. Schultz. Dr. Schultz' October 4, 2006, medical record provides:

[Kennedy] has significant degenerative joint disease secondary to his job on the railroad for several years. His job duties required running and jumping onto and off of trains, not to mention the vibratory trauma his body endured while working for the railroad. I believe that his job duties on the railroad are the primary reason that his joints have degenerated. Consequently, he has been unable to exercise as he would like secondary to joint pain and has developed obesity. He is to see Dr. Walton next week for initiation of a gastric bypass procedure. He also follows with Dr. Fike and Whiteneck for injections into his right knee for his degenerative joint disease.

¶ 16 Accordingly, the question in the present case is whether the evidence, read in a light most favorable to Kennedy, creates a genuine issue regarding when Kennedy knew, or a reasonable person knew or with reasonable diligence should have known, not only that he had suffered a cumulative injury to his bilateral knees but also that the injury was caused by his employment at the railroad. To make this determination, the trial court applied the discovery rule and found Kennedy's claim was time barred because he had reason to know in October 2001 that he had a bilateral knee injury and that it was related to his employment.

[T]he court is of the opinion that this plaintiff had reason to know back in 2001 what was creating his problems. And if you read the records, the overall discussion was it was related to the nature of the job he had and what was going on with his employment. I think he had reason to know.

We conclude that whether Kennedy's prior incidents of knee problems were sufficient to demonstrate when he knew or should have known of a bilateral knee injury and its cause is an unresolved question of fact.

¶ 17 In an analogous case, *Green v. CSX Trans. Inc.*, 414 F.3d 758 (7th Cir.2005), an injured railroad employee brought a two count FELA action seeking to recover for a single injury incident on January 18, 2000, to her right shoulder and for cumulative and repetitive trauma injuries to both shoulders.

¶ 18 With respect to Green's claim for cumulative trauma injuries, the record provides Green had complained of shoulder pain to her doctors for years. In 1988, Green's medical records provide she has a history of right shoulder pain when it is cold. She was diagnosed with bursitis and was given an anti-inflammatory. In 1993, her medical records note she had shoulder discomfort and that she believed she sprained her shoulder at work. She returned five (5) months later for right shoulder pain with probable tendinitis. She was again prescribed an anti-inflammatory. In 1997, Green's co-worker filed a complaint with CSX asserting that he and other employees, including Green, were experiencing right shoulder discomfort due to their work duties.

¶ 19 Green filed her action under FELA on October 15, 2002. CSX argued Green's claims were barred by FELA's statute of limitations. The trial court granted CSX's motion regarding Green's cumulative trauma right shoulder claim, finding Green "knew she had right shoulder problems as far back as 1997, if not earlier." *Id.* at 763. The trial court concluded Green's cause of action was barred by the statute of limitations because her medical records from 1994 indicated Green used her arm at work, and thus she was aware her problems could be work-related. *Id.* Further, the court found the 1997 letter from the co-employee to CSX provided evidence Green knew she was having work-related shoulder pain as of 1997. *Id.*

¶ 20 The Seventh Circuit Court of Appeals reversed, finding there was sufficient evidence to create a genuine issue of fact regarding whether a reasonable person knew or with reasonable diligence should have known before October 15, 1999, not only that Green had suffered the cumulative injury to her right shoulder but also that the injury was caused by her work at the railroad. Before October 15, 1999, there were only a few references to shoulder pain: 1) in 1988 when she was seen for left shoulder pain; 2) in 1993 for right shoulder pain with possible shoulder sprain at work; 3) in 1994 for right shoulder pain with a diagnosis of tendonitis and she was given an anti-inflammatory; and 4) the 1997 letter from her co-worker noting right shoulder discomfort due to work conditions. The court noted that none of these reports was serious enough to put Green on notice that it was time to sue her employer or lose her right to do so:

It is not the law that if you are scratched as a result of someone's negligence or other tort you must sue, even though the scratch is trivial, against the possibility that it might develop into something serious after the period of limitations has run. "Presumably there is room for a de minimis concept where there has been some tortious impact but such inconsequential manifestations that a reasonable person would not consider he was either injured or that it was appropriate to make inquiry."

*Green,* 414 F.3d 758, 764, (citing *Lancaster v. Norfolk & Western Ry. Co.,* 773 F.2d 807, 821 (7th Cir.1985), (quoting *Nivens v. Signal Oil & Gas Co., Inc.,* 520 F.2d 1019, 1024 (5th Cir.), modified on other grounds, 523 F.2d 1382 (5th Cir.1975))). Thus, there was a question of fact whether Green's claim was barred by FELA's statute of limitations.

¶ 21 Therefore, the relevant inquiry in the present case is when Kennedy knew or should have known of a bilateral knee injury and that there was a causal relation between his employment with BNSF and this injury. The undisputed facts reveal Kennedy first complained of right knee pain in October of 2001. An x-ray revealed progressive degenerative change with no definite acute abnormality. In November of 2001, Kennedy returned to Dr. Ogle where he asserted his right knee was much better. There is no evidence of any complaint or injury to Kennedy's left knee at this time. Although Kennedy's medical records provide he continued to take an anti-inflammatory, there are references in the record Kennedy took the anti-inflammatory for a foot injury and for a subsequent car accident. Thereafter, Kennedy saw Dr. Fike in August of 2003 complaining of left leg or knee pain. From November 20, 2001, through April 18, 2006, Kennedy worked full-time without restrictions.

¶ 22 The first reference to a bilateral knee problem was not until three (3) years later, on July 13, 2006. Although Dr. Fike notes Kennedy had been having problems with bilateral knees for a number of years and had been on an anti-inflammatory, this alone does not establish Kennedy knew or with reasonable diligence should have known that he had suffered a cumulative injury to his bilateral knees and that the injury was caused by his work at the railroad.

¶ 23 Reviewing the record in the light most favorable to Kennedy as this Court must, the medical history indicates Kennedy was aware of pain in his knees, having gone to the doctor in October of 2001 for right knee pain, in August of 2003 for left leg or knee pain, and in July of 2006 for bilateral knee complaints. However, the record provides the pain was helped and/or relieved by an anti-inflammatory and there is no evidence the

knee problems incapacitated Kennedy, as he worked full-time with no restrictions. We disagree with the trial court's conclusion that the record establishes Kennedy had reason to know in October of 2001 that he had a bilateral knee injury and that his employment was the cause of his injury. Rather, Kennedy has presented sufficient evidence to create a genuine issue of fact on these issues. Close cases under FELA should be allowed to proceed to trial. See *Bailey v. Cent. Vt. Ry.*, 319 U.S. 350, 354, 63 S.Ct. 1062, 87 L.Ed. 1444 (1943)("To deprive [railroad] workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them.").

¶ 24 In each of the cases relied upon by BNSF to support its contention that summary judgment was proper, the plaintiff was aware of a chronic condition, not only sporadic symptoms, and knew or strongly suspected that work was the cause of the injury. See *Matson v. Burlington N. Santa Fe R.R.*, 240 F.3d 1233 (10th Cir.2001)(plaintiff complained to doctor of chronic back pain and a significant worsening of pain that he believed to be work-related more than three (3) years prior to filing suit); *Tolston v. Nat'l R.R.*

*Passenger Corp.*, 102 F.3d 863 (7th Cir.1996)(plaintiff began suffering extreme pain and seeking regular treatment and medication six (6) years before filing suit); *Fries v. Chicago & Northwestern Transp. Co.*, 909 F.2d 1092 (7th Cir.1990)(ringing in ears, which worsened at work, subsided on weekends, and would not subside without two (2) hours of silence after coming home from work, developed five (5) or six (6) years prior to filing suit).

¶ 25 Accordingly, the trial court's July 15, 2009, order is reversed and the matter remanded for further proceedings consistent with opinion.

¶ 26 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

WISEMAN, V.C.J., and BARNES, P.J., concur.