# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1958

_____

Corey White

*Plaintiff - Appellant*

v.

Union Pacific Railroad Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: May 10, 2017
Filed: August 15, 2017

_____

Before SMITH, Chief Judge, COLLOTON and KELLY, Circuit Judges.

_____

SMITH, Chief Judge.

Corey White sued Union Pacific Railroad Company ("Union Pacific") under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq*., alleging liability for a lower-back injury. The question we address is whether White's August 2012 suit is time-barred by the three-year FELA statute of limitations. More specifically, should White reasonably have known before August 2009—three years before filing suit—that Union Pacific's rough tracks were injuring his lower back? White, a

locomotive engineer for Union Pacific, testified that in 2007 and 2008 he experienced recurring lower-back pain that he attributed to potholes in the tracks, and that this was the same pain for which he later sought medical treatment. Because White should have known about his injury and its cause more than three years before filing suit, the suit is time-barred. We therefore affirm the district court's[1] judgment.

## I. *Background*

White first injured his back in a work-related mishap in 1999. As White pulled a work implement for a concrete company, he felt burning and tingling down to his hands and his knees. The injury kept him from working for seven or eight months. His chiropractor "thought maybe there were some dis[c] issues." But White believes that he healed from that injury "[f]or the most part."

In 2001, White began working for the Iowa Missouri Rail Link (IMRL) as a switchman and conductor.[2] He passed a physical examination and had no back problems while with IMRL. In 2004, White went to work for Union Pacific. He passed a Union Pacific medical exam. He worked as a switchman and conductor from 2004–2006, mostly on the "road" but sometimes in the yard. During this time, White had no back problems.

In 2006, Union Pacific promoted White from conductor to engineer. Engineers receive better pay and have different responsibilities. As an engineer, White was responsible for the brake and the throttle—in White's words, "the movement of that

---

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

[2]White explained the difference between the positions: A switchman "[s]witches car in the yard as a switchman, builds trains, makes up trains. The conductor is more of a freight conductor, you're riding the trains. That's your responsibility is the train, everything that's located behind the locomotive."

train." The nature of the engineer's job means that he pays close attention to the feel of the train. "[A]s an engineer," White said, "you feel these jarring dips and bumps," which White compared to "a pothole in the street." White noted that an engineer who was not prepared for a pothole would find the contents of his desk in his lap. And when the train would bottom out, "you would feel that through the bottom of the seat into your rump all the way up your back, just a jarring, tingling, sharp pain sensation."

Beginning in 2007, White worked frequently on the Clinton subdivision—a part of the railroad that runs from Boone, Iowa, to Chicago, Illinois. White's run began at Boone, in central Iowa, and ended at Clinton, on the Illinois border—about 200 miles away. On this run, several trains moved constantly back and forth over two sets of track, making this a high-density traffic section. White considered the Clinton subdivision track to be in the worst condition of any track that he traveled. White testified that during 2007 and 2008, he regularly experienced bottoming-out situations caused by irregularities in the track. The worst ones—which occurred at least once a run—caused him to feel pain in his lower back.

In 2010, White first saw a doctor for his lower-back pain. After seeing other doctors for further treatment, White left Union Pacific in 2011. In August 2012, he sued Union Pacific under FELA, alleging that its work conditions caused his lower-back injury.

Union Pacific moved for summary judgment, arguing that White's claim was barred by FELA's three-year statute of limitations. *See* 45 U.S.C. § 56. Based on White's statement that his pain had gotten progressively worse from 2001 to 2011, Union Pacific argued that his claim accrued in 2001. The district court disagreed.[3]

---

[3]The district judge who ruled on the summary judgment motion was not the district judge who later tried the case.

The court noted that White's pain was "sufficiently minimal as late as 2004 that he was cleared by [Union Pacific]'s medical personnel" and that White "did not seek medical treatment until September 2009."[4] The court also noted that White's testimony about his injuries focused on what he knew as of summer 2009. Based on this evidence, the court concluded that a jury must determine, as a factual matter, when White's claim accrued.

At trial, White testified about his injury and its cause. He affirmed that beginning in 2007 and 2008, at least once every run his train would bottom out on the track. He affirmed that these situations would cause the type of lower-back pain for which he later sought medical treatment. Sometimes this "pretty bad pain" would run into his buttocks and down his leg as a sharp burning sensation. White attributed his pain to these bottoming-out situations—he said that he made this connection in his mind every run, day after day.

Based on that testimony, the district court granted judgment for Union Pacific as a matter of law, concluding that White's claim accrued before August 2009 and was therefore time-barred. The court noted that "both the record facts and the applicable law ha[d] evolved" since the court had earlier denied Union Pacific's summary judgment motion. White appeals, arguing that the district court should have allowed the jury to determine when his claim accrued.

II. *Discussion*

We review de novo whether the district court erred in granting judgment as a matter of law. *Tatum v. City of Berkeley*, 408 F.3d 543, 549 (8th Cir. 2005). Federal Rule of Civil Procedure 50 allows the trial court, after a party has been fully heard on an issue, to resolve the issue against that party and enter judgment accordingly if a

---

[4]White saw a doctor in September 2009 about shoulder pain; his first visit about lower-back pain was in October 2010.

reasonable jury could not find in that party's favor. Fed. R. Civ. P. 50(a)(1). The inquiry is the same as on summary judgment: Does the evidence present "sufficient disagreement to require submission to a jury," or is it "so one-sided that one party must prevail as a matter of law"? *Tatum*, 408 F.3d at 549 (quoting *Kinserlow v. CMI Corp.*, 217 F.3d 1021, 1025 (8th Cir. 2000)). In making this decision, the court must draw all reasonable inferences in favor of the nonmoving party and must not judge credibility or weigh evidence. *Id.*

Here, the court decided as a matter of law that White's suit was untimely. "No action shall be maintained under [FELA] unless commenced within three years from the day the cause of action accrued." 45 U.S.C. § 56. When the injury is not a single traumatic one with immediate symptoms, but rather a latent one with symptoms appearing over time, "the cause of action does not accrue until the employee is aware or should be aware of his condition." *Fletcher v. Union Pac. R.R. Co.*, 621 F.2d 902, 906 (8th Cir. 1980) (citing *Urie v. Thompson*, 337 U.S. 163 (1949)). In addition to knowing of his condition, the employee must also know—or have reason to know—the condition's cause. *Courtney v. Union Pac. R.R. Co.*, 713 F. Supp. 305, 308 (E.D. Ark. 1989). "Both components require an objective inquiry into when the plaintiff knew or should have known, in the exercise of reasonable diligence, the essential facts of injury and cause." *Fries v. Chi. & Nw. Transp. Co.*, 909 F.2d 1092, 1095 (7th Cir. 1990); *see also Sweatt v. Union Pac. R.R. Co.*, 796 F.3d 701, 707 (7th Cir. 2015).[5]

White contends that he was not on notice about the aggravation of his lower-back injury until he saw a doctor in October 2010. Citing *Fletcher*, he discerns a rule

---

[5]Because it is immaterial to the outcome of this case, we do not discuss the legal difference, if any, between a new yet latent injury and the aggravation of a preexisting injury. *See Aparicio v. Norfolk & W. Ry. Co.*, 84 F.3d 803, 815 (6th Cir. 1996), *overruled in part on other grounds by Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000).

in this circuit that a latent injury manifests itself "when a plaintiff first seeks medical treatment." This rule is necessary, according to White, because to hold that "garden variety aches and pains" trigger the statute of limitations would encourage laborers to rush to their doctors—and lawyers—with every minor ache. The premise is that such aches ordinarily would not cause a reasonable person to seek treatment, and thus are not serious enough to put someone on notice of an injury worth suing over.

While we have held that seeking medical treatment is a *sufficient* sign that a claim has accrued, we have never held that it is a *necessary* sign. Thus, in *Fletcher*, we held that the employee's cause of action accrued, at the latest, on the date that his back problem was medically diagnosed. *Fletcher*, 621 F.2d at 907. But we also noted that "[i]f his back bothered him constantly from [an earlier date], his cause of action accrued on that date." *Id.* at 907 n.7. Thus, a formal diagnosis is not required. *See also Sweatt*, 796 F.3d at 708 ("[A] plaintiff cannot wait until he receives a medical diagnosis to begin pursuit of his claim." (discussing *Fries*, 909 F.2d at 1095)).

*Fries*, a Seventh Circuit case, is instructive. There, the court held that as a matter of law the plaintiff should reasonably have known about his hearing problems and their cause by 1981, four years before a diagnosis. *Fries*, 909 F.2d at 1095–97. The plaintiff had testified that in 1981 the frequency of the ringing in his ears would increase toward the end of the work day, worsen during the work week, and improve only on the weekend. *Id.* at 1094. He also said that the only cause he could think of was his work. *Id*. The court noted that even though the plaintiff lacked actual knowledge of his injury, and the injury had not reached maximum severity as of 1981, his symptoms as of that date imposed a duty to investigate. *Id.* at 1096. Otherwise, the court said, a plaintiff could "unilaterally postpone the running of the statute of limitations by negligently failing to investigate the fact of and cause of his injury." *Id.* (quoting district court opinion). The plaintiff's suit was therefore time-barred because if he had exercised reasonable diligence, he would have known both his injury and its cause many years before he first saw a doctor and filed suit. *Id.* at 1097.

*Sweatt* is a similar case. 796 F.3d 701. It involved a plaintiff who noticed hand and shoulder pain in May or June 2009, saw a nurse practitioner for hand pain in mid-November 2009, and saw a doctor in late November 2009. *Id.* at 704. His lawsuit—filed exactly three years after the doctor's visit—was held untimely. *Id.* at 708. Despite the plaintiff's attempt to characterize his pain as the intermittent result of a minor injury and nothing more than muscle soreness, he had also testified that his pain was "unbearable" and had sought help from coworkers. *Id.* Relevant to our case, the court noted two things: (1) the plaintiff's failure to miss work was not controlling, because "his effort in working in the face of injury does not forestall the date of accrual"; and (2) the plaintiff's "plea of ignorance" about the seriousness of his injury was insufficient, because "a plaintiff cannot wait until he receives a medical diagnosis to begin pursuit of his claim." *Id.*

For one more example, in *Campbell v. Grand Trunk Western Railroad Co.*, the plaintiff testified that beginning in 1993 or 1994, he experienced daily tingling and pain when working with power tools on the railroad and that the pain would subside when he stopped using the tools. 238 F.3d 772, 775 (6th Cir. 2001). Beginning in 1994 or 1995, he would wake up with numbness in his hands. *Id.* at 776. In 1998, when his symptoms worsened, he saw a doctor and was diagnosed with carpal tunnel syndrome. *Id.* His suit, filed six months later, was time-barred. *Id.* at 776–77. Notwithstanding his attempts to minimize or claim ignorance about his injuries, his daily symptoms triggered a duty to investigate. *Id.* at 777.

White contends that *Green v. CSX Transportation, Inc.* is the more factually similar precedent. 414 F.3d 758 (7th Cir. 2005). In that case, more than three years before filing a FELA claim, Green had mentioned shoulder pain and discomfort to her doctor three times and been treated with a mild anti-inflammatory for it once. *Id.* at 764. A coworker had also noted Green's shoulder discomfort in a letter to their employer. *Id.* The court determined that Green's pain complaints and symptoms were

not serious enough to put her on notice: "[H]er shoulder pain prior to [the statute-of-limitations period] may have been little more serious than a scratch, failing to put a reasonable person on notice that she had suffered a cognizable injury and must sue or risk losing her right to do so." *Id.* There was thus a fact issue on when Green's claim had accrued. *Id.* at 764–65.

As the district court recognized, White's case is more like *Fries*, *Sweatt*, and *Campbell* than it is like *Green*. At trial, White acknowledged that in 2007 and 2008 he experienced "pretty bad pain" in his lower back at least once a run; that this was the same pain for which he later saw several doctors; that this pain would sometimes run into his buttocks and down his legs as a "sharp burning sensation"; and that this pain was connected to irregularities in the railroad track. This information put White on notice to investigate "his known physical problem," i.e., his frequent, serious, track-induced pain. *See Campbell*, 238 F.3d at 777. This is true even if White did not actually think that he was injured before seeing a doctor in 2010. "Actual notice is not required for accrual. After a condition manifests itself, the question becomes whether the plaintiff knew or, through the exercise of reasonable diligence, *should have known* of the cause of his injury." *Sweatt*, 796 F.3d at 707 (citation omitted). A medical diagnosis is certainly sufficient to put an injured party on notice, but it is not always required where, as here, the plaintiff acknowledges injury awareness before a medical diagnosis occurs. The better rule is that a claim accrues when one reasonably should know that his symptoms are fairly attributable to a workplace injury. The district court correctly concluded, as a matter of law, that White's symptoms were serious enough in 2007 and 2008 to raise a duty to investigate. Because White did not investigate and file suit within three years of the accrual of his claim, the claim is time-barred.

### III. *Conclusion*

Accordingly, we affirm the district court's judgment.

<hr>