Mark D. Pfeiffer, Chief Judge
Mr. Martin Griffin ("Griffin") appeals from the entry of summary judgment by the Circuit Court of Livingston County, Missouri ("trial court"), on his Federal Employees Liability Act ("FELA") claim *580 for work-related injuries against his former employer, Dakota, Minnesota & Eastern Railroad Corporation. We reverse and remand.
Factual and Procedural Background[1]
Griffin began his railroad employment in 1988, when the territory in which he worked was owned by the Soo Line Railroad. The territory has been owned by several other entities during Griffin's twenty-five-year railroad career, including I&M Rail Link ("IMRL"), Iowa, Chicago & Eastern Railroad Company, and, most recently, Dakota, Minnesota & Eastern Railroad Corporation ("the Railroad"). Throughout Griffin's railroad career, he worked the same job with the same duties along the same territory for all the various entities that owned the territory. Griffin's job duties included operating a material truck and other equipment, performing track maintenance, including replacing ties, installing rail and ballast, and performing bridge work.
On April 17, 2001, Griffin was pulling a railroad spike with a claw bar in the course of his employment for IMRL when the head of the spike broke off and he fell forward, jamming his neck and right shoulder (the "spike incident"). He also developed upper back pain. He was diagnosed as having sustained a herniated disc in his cervical spine and was treated for pain with physical therapy, prescription medications, and epidural injections. Because Griffin's pain from the spike incident did not resolve with conservative treatment, he underwent a cervical discectomy and fusion on September 9, 2003. The surgery did not provide him with complete relief, and he has had regular treatment for pain, including prescription medication and osteopathic manipulation therapy, since returning to work after the surgery. Over the years, he developed ongoing neck pain from degenerative disc disease in the neck. Griffin filed a petition against IMRL seeking damages for the injuries sustained in the spike incident and, in 2004, entered into a Settlement Agreement and General Release related to the spike incident.
From 2004 through his last day of employment with the Railroad in 2013, Griffin primarily drove the Railroad's 2004 Sterling material truck. Even when the material truck was new, it rode stiff, and Griffin likened it to "being on a trotting horse." Logging tires, which "ride really rough," were used on the truck. When driving to different locations along the track, Griffin had to drive over rough, graveled back roads. Griffin had the truck's suspension repaired several times, had broken link springs replaced, had a new dash installed, and had a seat fixed that had been bounced off; but the repairs did not improve the ride. Griffin made a number of verbal complaints to at least three supervisors over a ten-year period about the truck having an unusually rough ride, to no avail.
*581 On September 5, 2013, Griffin drove his work truck for long distances and performed various track maintenance activities. After he arrived at his home in Trenton, Missouri, he received a phone call around 8:00 p.m. from his supervisor, who asked him to drive to Excelsior Springs, Missouri, to remove a tree that had gone through the windshield of a train locomotive. Griffin drove to Excelsior Springs to remove the tree from the train track. After finishing the job at midnight, he spent the night at a motel in Kearney, Missouri. He felt a severe knot in his back and stiffness in his neck before he went to bed.
On September 6, 2013, the pain from the knot or kink in his back was much worse when he woke up. He called his supervisor and told him that he was experiencing severe back pain and that he would drive the truck to the supervisor's office in Chillicothe, Missouri, a distance of approximately seventy miles, but that he could not work that day. When Griffin got back to Chillicothe, he filled out an injury report, because his pain was different than it had ever been before and, hence, he believed that he had suffered an exacerbating new injury that was work-related.
Griffin then returned home to Trenton and went directly to the emergency room due to the severe pain he was experiencing. He underwent an epidural steroid injection in his back and was told to stay off work for a week and follow up with the doctor a week later. Ultimately, however, due to back and neck pain that Griffin was no longer able to manage with medical assistance, Griffin was never able to return to work for the Railroad. Griffin applied for a disability annuity with the Railroad Retirement Board on January 23, 2014.
On December 26, 2013, Griffin filed a FELA petition, alleging in Count I that on or about September 2013, the Railroad's negligent acts or omissions resulted in Griffin sustaining new severe and permanent injuries to his neck, back, spine, and body while operating an unsafe Railroad truck; and alleging in Count II that throughout his railroad career, he was subjected to repetitive trauma while repairing the Railroad's tracks and that the Railroad's negligent acts or omissions resulted in Griffin sustaining severe and permanent injuries to his neck, back, spine, and body.
The Railroad moved for summary judgment. First, the Railroad asserted that Griffin's claims were barred by FELA's three-year statute of limitations in that: (1) the injuries for which Griffin sought damages were directly related to an April 17, 2001 injury he sustained while working for the Railroad's predecessor; and (2) Griffin knew or should have known more than three years before filing suit that his injuries were also caused by other activities he performed at work, including operating his work truck, heavy lifting, and other activities. Second, the Railroad argued that Griffin released all of his claims pursuant to the 2004 Release in which he released the Railroad's predecessor and all its successors from liability for damages relating in any way to the 2001 spike incident, to which the Railroad claimed his current injuries were directly related.
Griffin argued in response to the statute of limitations issue that he had driven his assigned "defective," "rough-riding" truck multiple years for the Railroad, but he had a new injury on September 5, 2013, when he drove over 300 miles that day and then had to remove a tree that had fallen on a track. The next morning, he had such severe pain in his back that it required him to go to the emergency room where he received an epidural steroid injection in his back and was told to stay off work for a period of convalescence. Griffin contended that he filed suit on December 26, 2013, well within the three-year statute of limitations in that his injury, for FELA purposes, *582 occurred on September 5, 2013. Griffin further argued that the 2004 Release agreement relating to the 2001 spike incident could not immunize the Railroad from its negligence in causing a new injury to Griffin in 2013.
The trial court granted summary judgment in favor of the Railroad on all of Griffin's claims. Griffin timely appealed. Additional facts will be discussed in the analysis portion of this opinion as necessary.
Standard of Review
Appellate review of summary judgment is de novo. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp. , 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate where the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 74.04(c)(6). For purposes of Rule 74.04, a "genuine issue" exists where the record shows two plausible, but contradictory, accounts of the essential facts, and the "genuine issue" is real, not merely argumentative, imaginary, or frivolous. ITT , 854 S.W.2d at 382. We review the record in the light most favorable to the party against whom judgment was entered, and we accord that party the benefit of all inferences which may reasonably be drawn from the record. Id. at 376.
Statutory Framework
FELA provides, in part:
Every common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury ... resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars , engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.
45 U.S.C.A. § 51 (emphasis added). "FELA 'was designed to be a broad, remedial statute, eliminating several common-law tort defenses and providing liberal recovery for injured workers.' " Rice v. BNSF Ry. Co. , 346 S.W.3d 360, 368 (Mo. App. S.D. 2011) (quoting Briggs v. Kansas City S. Ry. Co. , 925 S.W.2d 908, 913 (Mo. App. W.D. 1996) ). " 'The enactment of FELA and subsequent United States Supreme Court decisions interpreting it not only broadened the common law duty of a railroad employer, they also increased the decision-making role of the jury.' " Id. (quoting Briggs , 925 S.W.2d at 913 ).
A railroad's liability under FELA is limited to its employees, and only for injuries sustained in the course of employment. CSX Transp., Inc. v. McBride , 564 U.S. 685, 691, 131 S.Ct. 2630, 2636, 180 L.Ed.2d 637 (2011). However, FELA's causation language, "is as broad as could be framed." Urie v. Thompson , 337 U.S. 163, 181, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). Given the breadth of the phrase "resulting in whole or in part from the [railroad's] negligence," and Congress's "humanitarian" and "remedial goal[s]," the Supreme Court has recognized that, in comparison to tort litigation at common law, "a relaxed standard of causation applies under FELA." Consol. Rail Corp. v. Gottshall , 512 U.S. 532, 542-43, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994). The Court described that lax standard in Rogers v. Missouri Pacific Railroad Co. , 352 U.S. 500, 506-07, 77 S.Ct. 443, 448-49, 1 L.Ed.2d 493 (1957) (emphasis added) (footnotes omitted):
Under [FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest , in producing the injury ... for which damages are sought. It does not *583 matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes.... Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury.... Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. The statute expressly imposes liability upon the employer to pay damages for injury ... due 'in whole or in part' to its negligence.
FELA actions must be "commenced within three years from the day the cause of action accrued." 45 U.S.C § 56. "A trial court must determine whether a plaintiff has complied with the statute of limitations without regard to the merits of the claim of injury." Sabalka v. Burlington N. & Santa Fe Ry. Co. , 54 S.W.3d 605, 609 (Mo. App. W.D. 2001) (citing Urie , 337 U.S. at 168, 69 S.Ct. 1018 ). "The primary purpose of the FELA statute of limitations is to protect the railroad from having to defend against stale claims when evidence has been lost, memories have faded, and witnesses have disappeared." Id. (internal quotation marks omitted). Griffin's petition was filed on December 26, 2013, which means that the accrual date for the cause of action had to be on or after December 26, 2010, to avoid the statute of limitations.
The accrual of a cause of action under FELA depends upon the nature of the injury. Johnson v. Norfolk & W. Ry. Co. , 836 S.W.2d 83, 85 (Mo. App. E.D. 1992). "In traumatic injury cases, when the effects of the injury are immediately apparent, the cause of action accrues at that point, whether or not the full extent of the disability is known." Sabalka , 54 S.W.3d at 609. In contrast, in cases where continual exposure to a harmful occupational condition produces an injury, "the statute [of limitations under FELA] begins to run when the accumulated effects manifest themselves." Id. (citing Urie , 337 U.S. at 170, 69 S.Ct. 1018 ). "Under this [discovery] rule, a FELA claim accrues when the plaintiff knows or should know in the exercise of reasonable diligence the essential facts of his injury and its causes." Id. (citing Fries v. Chicago & Nw. Transp. Co. , 909 F.2d 1092, 1096 (7th Cir. 1990) ). Subsequently, federal courts have described the discovery rule as "an objective test of the plaintiff's awareness" of his injury and its cause." Johnson , 836 S.W.2d at 85.
Analysis
Statute of Limitations
Griffin argues that the trial court erred in entering summary judgment because there was a genuine issue of material fact as to the accrual date of his cause of action against the Railroad pursuant to precedent interpreting FELA. Griffin contends that he suffered a new and exacerbating re-injury to his neck and back on September 5, 2013, due to the Railroad's negligence in not providing him with proper equipment, and that he filed suit based on that injury within the applicable statute of limitations.
Griffin also alleged continual exposure to a harmful condition (rough-riding truck), which produced an identifiable injury on September 5, 2013. Accordingly, Griffin argues that the statute of limitations does not begin to run until the accumulated effects manifest themselves. Urie , 337 U.S. at 170, 69 S.Ct. 1018. Under this "discovery rule," "a FELA cause of action accrued when the plaintiff became aware of his injury and its cause." Id.
*584 Thus, the principal issue is whether there is a genuine dispute as to whether (1) Griffin sustained a new injury on September 5, 2013 and/or whether Griffin sustained a continuous exposure FELA injury and, if so, when Griffin knew or should have known, in the exercise of reasonable diligence, the critical facts of both his injury and its cause as being work-related.
Conversely, the Railroad asserts the following arguments demonstrating that Griffin had actual knowledge prior to December 26, 2010, that his ongoing neck and back conditions were related to his work, to-wit:
• The Railroad contends that Griffin's medical records establish that his current neck pain is due to the spike incident, that the degenerative disc disease in his neck is related to the prior fusion surgery, and that he has been treating regularly for his neck pain for more than fifteen years. Consequently, because Griffin's neck pain is directly related to the spike incident, his cause of action accrued on April 17, 2001-more than twelve years before he filed his petition in this matter.
• Additionally, the Railroad argues that Griffin's medical records establish that he had been experiencing ongoing lower back pain since at least 2004 and that he knew the pain was work-related, considering references in the medical records illustrating his belief that certain work tasks, including operating his work truck, caused or contributed to his lower back pain. Consequently, because Griffin suspected that his ongoing pain was caused by his work activities, he had an affirmative duty to investigate the cause of his chronic ongoing pain long before December 26, 2010.
• The Railroad also argues the injury Griffin allegedly sustained on September 5, 2013-lower back and neck pain-was not a new injury in that it was no different than the continuous lower back and neck pain he had been experiencing and for which he had been treating on a regular continuous basis for more than eight years.
• Finally, the Railroad contends that Griffin did not show that his pre-existing condition was somehow aggravated by a new, distinct act of negligence by the Railroad. The Railroad argues that the Railroad's alleged negligence in assigning him to operate an allegedly defective truck on September 5, 2013, was the same act of negligence he alleges that the Railroad committed continuously since 2004 when it first assigned him to operate the truck.
The Railroad argues that White v. Union Pacific Railroad Company , 867 F.3d 997 (8th Cir. 2017), confirms its contention that Griffin's claims are time-barred. In White , the court held that plaintiff's 2012 FELA suit for a back injury that he allegedly sustained as the result of having to operate a train on a daily basis over uneven track accrued, for statute of limitations purposes, more than three years before he filed suit when, according to his own testimony, he first began to experience "pretty bad pain" in his lower back in 2007 and 2008 at least once a run due to irregularities in the railroad track. Id. at 1002. The court noted that "[a]fter a condition manifests itself, the question becomes whether the plaintiff knew or, through the exercise of reasonable diligence, should have known of the cause of his injury." Id. at 1003 (internal quotation marks omitted). The court determined that "[t]he better rule is that a claim accrues when one reasonably should know that his symptoms *585 are fairly attributable to a workplace injury." Id. The court concluded that White's symptoms were serious enough in 2007 and 2008 to raise a duty to investigate, and because he did not investigate and file suit within three years of the accrual of his claim, his claim was time-barred. Id.
Unlike White, who did not investigate his "known physical problem" of "frequent serious, track-induced pain," Griffin (1) had not experienced new or different neck and back pain (since his 2001 injury and treatment related to the spike incident) requiring emergent invasive medical treatment until September 2013; and (2) did investigate the cause of his new injury when he experienced new and acute symptoms in 2013 that were significantly worse than he had experienced previously and were serious enough that he both reported them as work-related and immediately sought emergency medical treatment.
"Under [FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest , in producing the injury ... for which damages are sought." Rogers , 352 U.S. at 506, 77 S.Ct. 443 (emphasis added). "Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury...." Id. at 506-07, 77 S.Ct. 443 (emphasis added). In making this inquiry upon review of the entry of summary judgment, we are required to review the record in the light most favorable to Griffin, as the party against whom summary judgment was entered, and to accord him the benefit of all inferences which may reasonably be drawn from the record. ITT , 854 S.W.2d at 376.
Griffin had a twenty-five-year history of working on the railroad. He experienced neck pain after the 2001 spike incident and underwent cervical fusion surgery, but he was able to return to work following his surgery despite chronic neck pain. Dr. Essmyer, Griffin's primary care physician, saw Griffin once every two or three months for ten years for treatment of his chronic neck and lower and mid-back pain, which was managed with prescription medication and non-invasive osteopathic manipulation therapy.
The record shows that on September 5, 2013, Griffin drove his work truck for long distances and performed various track maintenance activities, including the removal of a tree from a train track. Later that evening, he felt a severe knot and pain in his back and a significant stiffness in his neck before he went to bed. When he woke up the next morning, the pain had gotten much worse. After returning his truck to Chillicothe, he filled out an injury report, believing that his new and different pain symptoms were work-related. When he returned home, he went directly to the emergency room where he received a lumbar epidural steroid injection and he was never able to return to work for the Railroad due to the increased severity in his back pain that he had not experienced prior to September 2013.
At his deposition, Dr. Essmyer was asked, "[D]id the railroad accident of 9-[5]-13 when [Griffin] was driving the railroad truck aggravate the condition of [Griffin]'s lumbar spine and cause pain?" He answered: "As best I can tell from looking through the information[,] it looked like something happened that day that made his pain significantly worse [,] and from there on[,] he deteriorated pretty quickly and required multiple interventions and has continued to suffer quite a bit more than previous to that date. " Dr. Essmyer was then asked: "Similarly, the railroad accident of 9-[5]-13 when [Griffin] was driving the railroad truck aggravated the *586 condition of his cervical spine and caused pain?" He answered: "And I'm saying that it appears that day that he got significantly worse and had more cervical pain as well."[2]
Reviewing the record in the light most favorable to Griffin and according him the benefit of all reasonable inferences, as we are required to do, it appears that on September 5, 2013, after driving 300 miles in the Railroad's truck and after removing a tree from the Railroad's tracks, Griffin experienced a sudden onset of significantly worse neck and back pain. Soon thereafter, Griffin sought emergency medical treatment, including an epidural steroid injection. His "significantly worse" back and neck pain symptoms were of such a nature that Griffin was never able to return to work at the Railroad. And, simply put, a doctor that had treated Griffin for his degenerative disc diseasebefore the September 2013 incident testified that Griffin's spinal condition and symptoms were "significantly worse" after the September 2013 incident.
Under the "discovery rule," a FELA cause of action accrues when the plaintiff knows or should have known, in the exercise of reasonable diligence, the critical facts of both his injury and its cause as being work-related. Johnson , 836 S.W.2d at 85. See also Jones v. Kansas City S. Ry. Co. , 245 S.W.3d 834, 836 (Mo. App. W.D. 2007) ("The discovery rule is employed to determine when a manifestation of the injury has occurred. Thus, FELA claims accrue when an employee knew or should have known, in the exercise of reasonable diligence, the critical facts of both his injury and its cause being work-related." (citation omitted)). One plausible inference from the evidence is that Griffin's FELA claim accrued on September 6, 2013, and was well within the statute of limitations period. On that date, Griffin experienced different and much worse back and neck pain than he had ever experienced before; thus, he knew of his injury (whether acute or related to a continual workplace exposure) and its cause as being work-related when he experienced the sudden onset of significantly worse neck and back pain, reported his injury to the Railroad as being work-related, and sought emergency medical treatment. While the record could also plausibly support the theory of the Railroad that Griffin knew his ongoing degenerative neck and lower back conditions were work-related more than three years before filing suit, it does not negate Griffin's equally plausible argument detailed above, and it certainly does not negate Dr. Essmyer's testimony that Griffin had exacerbated his pre-existing injuries with resulting "significantly worse" symptoms of pain that manifested themselves to Griffin on September 6, 2013.
Although the issue of whether a claim is barred by the statute of limitations generally is a question of law, "when contradictory or different conclusions may be drawn from the evidence as to the date of accrual, it is a question of fact for the jury to decide." Rice , 346 S.W.3d at 371 (citing Sabalka , 54 S.W.3d at 609-10 ). "Summary judgment is inappropriate where the inferences drawn from the record support both the moving party's and the nonmoving party's accrual dates. Thus, the accrual date then becomes a question of fact for the jury to decide." Jones , 245 S.W.3d at 837 (citation omitted).
Here, because contradictory or different conclusions may reasonably be drawn from the evidence as to the date of accrual of Griffin's FELA claim, this question of fact *587 must be decided by the jury, not the trial court on a summary judgment motion.
Release
The Railroad also asserted that it was entitled to summary judgment because Griffin released all of his claims relating to his 2001 injury, to which his current injuries were directly related. Griffin responded that a release governed by FELA cannot be used to immunize a party from its future injury-producing negligent conduct, when such conduct causes an aggravation to pre-existing injuries.
The validity of a release in a FELA action is governed by federal rather than state law. Maynard v. Durham & S. Ry. Co. , 365 U.S. 160, 161, 81 S.Ct. 561, 562, 5 L.Ed.2d 486 (1961). Section 55 of FELA states that "[a]ny contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable a common carrier to exempt itself from any liability created by this chapter, shall to that extent be void." Section 5 of FELA "allows an employer to negotiate a release of claims with an employee provided the release is limited to those risks which are known by the parties at the time the release is negotiated." Wicker v. Consol. Rail Corp. , 142 F.3d 690, 702 (3rd Cir. 1998). However, a release is ineffective to shield an employer from post-release liability for new injuries or aggravation of old injuries. See Wilson v. CSX Transp., Inc. , 83 F.3d 742, 745 (6th Cir. 1996) (holding release did not absolve employer from liability for new injury after release was signed); Stephens v. Ala. State Docks Terminal Ry. , 723 So.2d 83, 86-87 (Ala. Civ. App. 1998) (holding prior signed release does not prevent recovery for aggravation of the original injury that is caused by a subsequent on-the-job accident).
The release is only relevant if Griffin's current FELA claim arose out of his 2001 injury. Because we conclude that the FELA claim accrual date is a question of fact for the jury to decide, we need not and do not decide whether the release bars Griffin's current claims.
Point granted.
Conclusion
The trial court's entry of summary judgment, including the award of costs to the Railroad,[3] is reversed, and the matter is remanded for further proceedings consistent with this opinion.
Anthony Rex Gabbert and Edward R. Ardini, Jr., Judges, concur.

In reviewing appeals from a trial court's summary judgment, we view the record in the light most favorable to the non-movant, according him the benefit of all reasonable inferences from the record. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp. , 854 S.W.2d 371, 376 (Mo. banc 1993).
The Railroad contends that Griffin's appeal should be dismissed due to briefing deficiencies in violation of Rule 84.04(c) and Rule 81.12(a). Though Griffin's appeal does contain certain procedural briefing deficiencies, since the briefing deficiencies do not impede our ability to decide the legal issues presented or require us to become an advocate for a party, we decline to dismiss the appeal on these grounds and have, instead, elected to exercise our discretion to decide the appeal on its substantive merits. Hawks Bluff Trucking v. Div. of Emp't Sec. , 529 S.W.3d 1, 4 n.2 (Mo. App. W.D. 2017). In the future, however, Griffin and his attorneys should pay heed to all of the briefing requirements required by the Rules as a failure to do so may lead to dismissal of one's appeal.

Though the Railroad argues that Griffin's appellate briefing refers to matters outside the record on appeal, these quotations from Dr. Essmyer are in the record on appeal and appropriately before this Court for consideration.

Pursuant to section 514.060, RSMo 2016, "In all civil actions, or proceedings of any kind, the party prevailing shall recover his costs against the other party, except in those cases in which a different provision is made by law." Because the trial court's judgment is reversed, the Railroad is no longer the prevailing party and, therefore, is not entitled to an award of costs.